No. 46,395

Louise E. Schmidt, Widow; Bradley Schmidt, Brian Schmidt, and Benny Joe Schmidt, Sons of Bernard Schmidt, Deceased, *Appellees*, v. Jensen Motors, Inc. and Iowa Mutual Insurance Company, *Appellants*.

(490 P. 2d 383)

Opinion filed November 6, 1971.

*C. Keith Sayler*, of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause and was on the brief for the appellants.

*Robert F. Glassman*, of Hays, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Fontron, J.: This is an appeal by Jensen Motors, Inc. and its insurance carrier, Iowa Mutual Insurance Company (herein called respondents) from an award of compensation entered in favor of

the widow and three minor children (referred to as claimants) of Bernard Schmidt, who was employed by Jensen Motors at the time of death. The examiner's award was sustained by the director of workmen's compensation, and by the district court on appeal, the court adopting *in toto* the findings made by the examiner.

The respondents' primary thrust is that Schmidt's death resulted solely from his intoxication and thus is not compensable under the Workmen's Compensation Act. The governing statute is K. S. A. 44-501 (*b*) (now K. S. A. 1970 Supp. 44-501[*b*]) which reads in pertinent part:

". . . if it is proved that the injury to the workman results . . . solely from his intoxication, any compensation in respect to that injury shall be disallowed. . . ."

This court has never had occasion to construe this statute, or to consider it in connection with the overall scheme of the Workmen's Compensation Act, although it has been a part of the Act since 1927.

The undisputed facts show that the deceased was a car salesman for Jensen Motors. On the morning of October 30, 1969, the day of his death, he drove from his home at Hays to Plainville, some 27 miles to the north, where his employer knew he had some appointments. He planned to drive back to Hays that evening to pick up his wife and return to Plainville after dinner for a visit with his folks.

We have no record of his activities in Plainville until approximately 4:30 or 5:30 in the evening when he called on a prospect at her home, remaining for perhaps an hour. During that time he did not drink, he did not appear to be intoxicated, and his customer did not detect the odor of alcohol on his breath, even though at one time he sat beside her on a divan showing her pictures of some cars.

His body was found in the north bound lane of the highway between Plainville and Hays shortly after 6:30 p. m., some 112 feet south of the white Pontiac car from which it was thrown. His wrist watch was stopped at 6:30. The highway trooper who investigated the accident estimated the speed of the vehicle at the time of the accident at 90 miles per hour, which he thought was reasonably accurate, although he couldn't say he was doing 90, 91 or even 80. An analysis of a blood sample taken by the

mortician at the trooper's request showed an alcohol content of 0.162% by weight.

In their brief, the respondents present the following argument: "The undisputed facts as shown by the Highway Patrol Report and blood alcohol test are such that the only reasonable conclusion is that the injury resulted solely from the intoxication"; "[t]he only reasonable conclusion is that he [Schmidt] would not have been driving at such a speed under such conditions if he had not been drinking"; and "the only reasonable application of the undisputed facts is that the blood alcohol content of 0.162 was the cause of such reckless driving and the cause of the injury."

Continuing along this line, the respondents call our attention to K. S. A. 1969 Supp. 8-1005, (now, as amended, K. S. A. 1970 Supp. 8-1005) which so far as material to this case reads as follows:

"Any criminal prosecution for the violation of the laws of this state relating to driving of a motor vehicle while under the influence of intoxicating liquor, . . . evidence of the amount of alcohol in the defendant's blood at the time alleged, as shown by chemical analysis of the defendant's blood, urine, breath or other bodily substance may be admitted, and shall give rise to the following presumptions:

"(b) If there was at that time 0.15 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor."

As we interpret the respondent's argument, it simply is that, judged by the standard set out in 8-1005, the decedent was intoxicated at the time of the accident, that the accident was due to his intoxicated condition and, accordingly, his death resulted solely from his intoxication.

On the other hand, the claimants take the position that the presumption of intoxication under 8-1005 is rebuttable; that the state trooper's estimate of speed and the blood analysis did not constitute the sole evidence bearing on the decedent's condition or on the cause of the accident; that respondents did not sustain their burden of establishing that the accident resulted *solely* from intoxication; and that the findings of the examiner, which the court adopted as its own, were sustained by the evidence.

A number of legal questions are raised by the parties pro and con, which, though they may be intriguing, bear little relation to the central point as we see it. In our judgment this is essentially a fact case and, according to our long established rule, our quest is to determine whether the findings of the trial court, adopted *in*

*toto* from the award of the examiner, are supported by substantial, competent evidence. (*Jones v. City of Dodge City,* 194 Kan. 777, 778, 402 P. 2d 108.) In *Gray v. Beller,* 199 Kan. 284, 428 P. 2d 833, also a workmen's compensation case, we said:

"The district court's determination as to whether a claimant's disability was due to an accident arising out of and in the course of his employment will not be disturbed on appellate review when there is substantial evidence to support it. (*Callahan v. Eby Construction Co.,* 192 Kan. 814, 391 P. 2d 315.)" (pp. 285, 286.)

Before examining the evidence, which we emphasize must be examined in the light most favorable to the claimants, who were the prevailing parties below, (*Jones v. City of Dodge City,* supra) we pause to point out that in 1A Larson's Workmen's Compensation Law, § 34.31, pp. 501, 502, the author records that thirty-six states of the union, make intoxication the basis of a separate defense, while three make it a ground for reduction in the amount of the award. The causal requirement varies widely, ranging from none at all in some states to sole causation in others. The Kansas statute is one of the few which fall within the latter category. In § 34.34 of the same work, Professor Larson says:

"The strictest type of statute, which requires a showing that intoxication was the sole cause of the injury, presents an opportunity for a little more controversy than the better-known concepts of causation in the other statutes. Because of the severe burden of proof, the great majority of attempts to invoke the defense have been unsuccessful, and there have been few denials of compensation, even when the intoxication played a substantial part in causing the injury. . . ." (pp. 507, 508.)

We need not recount the evidence in detail but will summarize parts which we deem material. All the evidence reflects that the night was rainy and the highway wet. The trooper testified this accident was not an unusual one, and indicated on his report that excessive speed was a contributing factor. The highway cut through a hill at the place where the accident occurred and the decedent's car had hit and ricocheted off the rock bank or wall at the east of the roadway.

Two witnesses, who were members of a quartet on its way from Plainville to Hays to attend classes, testified on behalf of the claimants. Construing their testimony as a whole, as best we can from a somewhat confusing record, they related that the car in which they were riding overtook and passed a white Pontiac car like that which one of the witnesses saw the decedent driving that morning; it was

variously estimated this took place from 4 to 11 miles north of Hays; that their car was traveling 55 to 60 miles per hour when it passed the Pontiac, which was within the speed limit, and they had no trouble passing it; that as they drove up the hill the Pontiac came up from behind and they heard a noise and saw the headlights; that a sudden rush or gust of air struck their car which shook it as if they were coming out of a tunnel; looking back they saw tail lights disappearing or turning off the road.

The chief chemist with the Laboratory Services Division of the State Board of Health, testified that in his opinion someone with a 0.162% blood alcohol level would be under the influence of alcohol, although he didn't think that at high levels of alcohol everyone would be intoxicated; that different people have varying degrees [of intoxication] to some extent and there is some difference in the way people are affected by the same amount of alcohol. Harold Jones, the highway trooper or patrolman, testified that in his opinion the 0.162% alcohol content would probably be a contributing circumstance to the accident but to what degree he could not say; that he did not contend that everyone with a 0.16% reading was intoxicated but it was the legal presumption; that it could be that someone with a 0.15% reading wouldn't be intoxicated.

In arriving at its findings in this case, the court was required to examine and take into consideration all the evidence introduced, that of the claimants as well as that of the respondents, giving such weight to the several parts of the evidence as, in its judgment, they seemed to merit. In evaluating the force and effect of the statutory presumption of intoxication set out in 8-1005, the court was entitled to consider not only that it could be rebutted by other evidence, as we said in *State v. Bailey*, 184 Kan. 704, 339 P. 2d 45, but also that the blood sample was drawn by a mortician, not by a physician or qualified medical technician as K. S. A. 8-1003 requires—the purpose of the requirement being, we presume, to insure that the sample was properly drawn and handled to the end it would be uncontaminated when tested.

We believe the evidence taken in its entirety is sufficient to sustain the court's finding, which we note is negative in nature "[t]hat the personal injury by accident, and death of the deceased, was not caused solely by reason of his intoxication." This court on previous occasions has written on the subject of negative findings and in *In re Estate of Winters*, 192 Kan. 518, 389 P. 2d 818, had this to say:

"An appellate court will seldom set aside a negative finding of a trial court if the evidence is limited in quantity and its weight and credibility may be questionable, or if the evidence may be disregarded for any reason." (Syl. ¶ 1.)

See, also, *Collins v. Merrick,* 202 Kan. 276, 448 P. 2d 1.

As pointed out by the respondents, a number of cases have arisen in other jurisdictions where compensation has been denied on the ground that the workman's injury resulted solely from intoxication. Those cases are easily distinguishable from this one, because in each of them the trial court, or in one instance the workmen's compensation commission, found the injury was due to intoxication and denied compensation, while contrary findings have been made in the present case and compensation awarded. In those cases the findings were deemed on appeal, to be sustained by the evidence, as on this appeal we consider the findings to be supported by the record.

*Woodring v. United Sash & Door Co.,* 152 Kan. 413, 103 P. 2d 837, is cited in support of the proposition that the deceased had abandoned his employment and thus that his death did not arise out of and in the course of his employment.

In that case, the facts were quite different. The claimant, Woodring, was a salesman who had been instructed by his employer to proceed from Tescott to Enterprise to see a Mr. Sumner. En route, Woodring went considerably out of his way to pick up four of his friends. Arriving at Enterprise, he was informed that Sumner was in Abilene, five or six miles away. He made no further effort to meet Sumner, nor did he pay any further attention to the business on which he was engaged. Instead, he and his friends repaired to a tavern, the Nighthawk Inn, where in the course of some sociable imbibing Mr. Woodring became somewhat woozy. On the way home, Woodring's car turned over and he was injured. The trial court found the injury did not arise out of and in the course of his employment. On appeal this finding was upheld, and properly so.

That case provides no precedent here. The evidence in this case, as we view the record, does not compel a conclusion that Schmidt had abandoned his employment, and the trial court found quite otherwise. The evidence indicates that Mr. Schmidt continued seeing prospects until 5:30 or later and, at the time he met his death, was on his way home from the community where his employment had taken him. We cannot say as a matter of law, under the facts of this case, that death did *not* arise from and in the course of em-

ployment. (*Blair v. Shaw,* 171 Kan. 524, 233 P. 2d 731; *Bienz, Administratrix, v. John Hancock Mutual Life Ins. Co.,* 195 Kan. 422, 407 P. 2d 222.

Other peripheral questions are raised and have been considered but require no further extension of this opinion.

The judgment of the court below is affirmed.