No. 46,258

Gordon Conger, *Appellee*, v. Ray Conger, *Appellant*.

(494 P. 2d 1081)

Opinion filed March 4, 1972.

*J. D. Conderman*, of Conderman & Talkington, of Iola, argued the cause and was on the brief for appellant.

*Stanley E. Toland*, of Toland & Thompson, of Iola, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Fatzer, C. J.: This was an action for possession of a quarter section of farmland in Allen County. The appeal is from the judgment of the district court placing the plaintiff, Gordon Conger, in possession of the real estate.

The defendant, Ray Conger, is an uncle of the plaintiff, and has been in possession of the quarter section since March 14, 1958, under the provisions of the Last Will and Testament of his father, J. I.

Conger, which was admitted to probate in Allen County on October 26, 1956.

Because the precise wording of the Will of J. I. Conger is one of the controlling factors, the part of the Will relating to the farm in question is set out:

"2. The Southwest Quarter of Section 5, Township 25 South, Range 18, East, in Allen County, Kansas, which is my home, I hereby give, devise and bequeath to my son, Ray Conger, for the term of his natural life, and then to my grandson, Gordon Conger, for the term of his natural life, with remainder in fee simple to the son or sons of Gordon Conger, who survive him, and, if none, then to my grandson, David Conger, for the term of his natural life, with remainder in fee simple to the son or sons of David Conger that are living at the death of David Conger.

"Each life tenant while in possession of said real estate as life tenant, shall pay the taxes assessed on said land, as the same become due and payable, keep the improvements thereon insured for their reasonable value against loss or damage from fire or windstorm, for the benefit of such life tenant and the other parties herein named to whom an interest or estate is devised in said real estate, and keep the buildings thereon in reasonable repair. Should he fail or neglect to pay the taxes, keep up the insurance or keep the buildings in repair as herein provided, then his estate and interest therein *shall terminate on such default.*" (Emphasis supplied.)

The issues were properly joined by the pleadings. The plaintiff alleged in substance the life tenancy of Ray Conger had terminated by reason of his failure and neglect to keep the improvements insured and the buildings in reasonable repair. The defendant denied the plaintiff's allegations and affirmatively alleged equitable considerations to the effect that if he was in default of any of the obligations required of him under the Will of J. I. Conger, they were not of such major nature as to terminate his estate, and that he stood ready to correct the same forthwith.

The case was tried to the district court, and the parties introduced their evidence in full. Following the trial, each party submitted requested findings of fact and conclusions of law. The district court visited the premises and viewed the buildings, and then made its own findings of fact and conclusions of law, and those pertinent to this controversy are quoted:

"2. The buildings on the farm at the death of the testator are described as follows:

"A one story frame dwelling house, 38' x 30', which was moved to the premises in the late 1940's as an old two room house over which the testator built a roof and added additional rooms.

"Frame barn with hayloft and metal roof 80' x 40', which building was on the premises in 1917 and was rebuilt by testator in 1924.

"Metal one car garage and lean-to, lean-to being added in 1951.

"Northeast granary with tin roof, 12′ x 12′, which was an old horse shed.

"Henhouse, 12′ x 14′ built prior to 1917.

"Storage building, 10′ x 10′.

"West granary, 16′ x 16′ a used building bought by the testator and moved to the premises prior to his death.

"Wellhouse building 3′ x 3′ x 3′.

"Granary and machine shed 40′ x 58′, which consisted of the building which was erected in the 1930's with a lean-to added in the late 1940's.

"All of said buildings are of frame construction except the metal garage and all of said buildings are presently on said premises with the exception of the granary and machine shed which was destroyed by fire in April 1961.

"3. The insurance being carried by the decedent at the time of his death was transferred over to the defendant at the time he entered upon his life tenancy of the premises. The evidence does not disclose which of said buildings was insured by the decedent at the time of his death, nor the amount of insurance carried on each building. Insurance was carried by the defendant on certain of the buildings from the aforesaid time to July 25, 1960 at which time such policy was cancelled by the carrier by reason of non-occupancy of the premises. The defendant obtained further insurance on said premises about two months thereafter, and this coverage was cancelled in February 1961. The premises remained uninsured from that time until May 5, 1961. There has been insurance coverage on the house, barn and henhouse commencing May 6, 1967 down to the present. The policy issued May 20, 1961 for five years covered in addition to the house, barn and henhouse, the metal garage and a frame granary, the latter item carrying an amount of $150.00. Each of the polices placed in evidence names Ray Conger as the only insured. None of the policies discloses his interest as being that of a life tenant.

"4. By way of repairs to the buildings during his tenancy, the defendant has attached new metal over a portion of the wooden exterior of the large barn; he has attached metal to the exterior of the north side of the barn; he installed some strengthening in the interior of the barn; he did some work on the barn foundation and in 1967 he made repairs to the barn roof. Little has been done by way of repair on the house except that it was papered and painted in 1958 and again in 1967; also defendant did make some improvements in the bathroom and replaced the stool, but the various fixtures appear to be nonserviceable at this time. The house is hardly habitable and it appears that the roof leaks substantially. There were no other significant repairs testified to by defendant or his witnesses.

"5. In the main all of the buildings are old and have suffered many years of wear, tear and weathering. However, repairs made over the years by the defendant were minimal at most and, except for the house and barn, few have been repaired at all. The granary and machine shed were destroyed by fire without fault on the part of defendant; this combination building has not been replaced.

"6. The defendant has paid the annual taxes which were assessed against said real estate."

"Conclusions of Law

"1. Whether through omission, mistake or inadvertence, the insurance coverage provided by the defendant has never covered the insurable interest of the succeeding life tenant and remaindermen. The policies offered in evidence did and do not cover several of the improvements, which by reason of obsolescence may not now be insurable. There is no evidence defendant ever attempted to provide insurance coverage for such other improvements.

"2. Such repair work as defendant has done was confined to the large barn and the house. The will requires reasonable repairs to the buildings, not just the barn and house. Repair of roofs and doors and covering holes in the siding would seem the most ordinary of repairs that might be performed by a life tenant. The smaller buildings have been left to weather and rot, with scarcely any repair work over the past thirteen years. The evidence is, however, that the buildings are in substantially the same state of repair as they were at decedent's death except for ordinary wear, tear and obsolesence with which defendant cannot be charged; but the thrust of this evidence goes to general appearance rather than specifics and particularly was not helpful as to roof conditions and the state of repair of the house.

"3. It might be more economically sound under present conditions to raze nearly all of the improvements but the decedent omitted any such grant of power to the defendant or succeeding life tenant. His belief must have been that the improvements were in such shape and state of repair that with ordinary repairs during their tenancy by one of two life tenants, the improvements would be utilitarian when the remaindermen came into possession. He so provided in his will.

"4. There seems to be no Kansas cases specifically in point. The conditions placed upon the tenancy of this defendant constitute conditional limitations upon his estate. See 28 Am. Jur. 2d, 256 (Par. 142). The life estate of the defendant is circumscribed by limitations in that it terminates: (1) Upon his failure or neglect to pay the taxes as the same become due and payable, or (2) upon his failure or neglect to keep the buildings thereon in reasonable repair, or (3) upon his failure or neglect to keep the improvements insured for their reasonable value against loss or damage from fire or windstorm, for the benefit of such life tenant and other parties therein named to whom an interest or estate is devised in said real estate. The first tenancy terminates upon the failure of the first tenant to do any one or more of those three conditions. Having failed to keep the buildings in reasonable repair, and having failed or neglected to provide insurance which conforms to the requirements set forth by the testator, the life estate of this defendant is terminated.

"5. The holding of Seay, et al., v. Seay, et al., 384 S. W. 2d, 466, is precedent for this holding. It may be argued that the Seay case differs from the one at bar because in that set of facts, the life tenant had not paid the taxes. It is conceded that the payment of annual taxes may be much more important to a succeeding life tenant and remaindermen than keeping insurance in force and making repairs. But, the will of J. I. Conger does not make such a distinction. As in the Seay case, it appears to make no difference whether the provisions in the will requiring the payment of taxes and insurance, and the performance of repairs is a condition subsequent or whether it is a limitation.

As in the Seay case, he who has the next expectant interest has taken action to have that interest vested in him.

"6. The life estate of the defendant, Ray Conger, has terminated because of his failure to keep the buildings in reasonable repair and his failure to keep the buildings insured for the benefit of all persons having an interest therein under the Will of J. I. Conger.

"7. The plaintiff, being the next succeeding life tenant under the Will of J. I. Conger, is entitled to possession of the property and judgment will be entered placing him in possession of the property.

"8. Although it may be gratuitous to so comment, the remaindermen may expect of the plaintiff as life tenant, a standard of observance of the conditions of the will to the extent this plaintiff has demanded of the defendant.

"Attorneys for the plaintiff will prepare a journal entry for signature by defendant's attorneys and presentation to the Court. (Filed April 27, 1970.)"

The appellant asserts three grounds for error. The first two go to the sufficiency of the evidence in support of the district court's findings that Ray Conger did not substantially comply with the obligation to keep the improvements on the property insured for the benefit of the "life tenant and the other parties therein named to whom an interest or estate is devised in said real estate," and did not substantially comply with the duty to "keep the buildings thereon in reasonable repair" as required by the Will of J. I. Conger. The last point relied upon is that the district court erred in disregarding equitable consideration in that it should have provided the appellant reasonable opportunity to make good the alleged defaults.

This court has reviewed the record in this case and finds that the findings of fact of the district court are amply supported; therefore, under the facts and circumstances, the findings of fact will not be set aside as not being supported by substantial competent evidence. (*Muntzert v. A. B. C. Drug Co.,* 206 Kan. 331, 478 P. 2d 198; *Huxol v. Nickell,* 206 Kan. 102, 476 P. 2d 606; *Schmidt v. Jensen Motors, Inc.,* 208 Kan. 182, 490 P. 2d 383.) The first two contentions of the appellant are without merit.

With regard to the question of whether the appellant is entitled to some equitable considerations in that he should be provided an opportunity to ameliorate the breach of duty that occasioned this lawsuit, it must be pointed out that this court does not rewrite instruments, nor does it construct by inference an intention of the testator that is not there. The right to make a will necessarily includes the right to make it according to the wishes and desires of the testator. Further, where the court has analyzed an entire in-

strument and the intention of the testator is clear and unambiguous, it is of no consequence that this court, a jury, the parties in interest, or anyone else might have done differently. In short, this court will construe wills where ambiguous; however, it will not substitute its judgment for that of the testator unequivocally expressed. (*Ginter v. Ginter,* 79 Kan. 721, 101 Pac. 634; *In re Estate of Graves,* 203 Kan. 762, 457 P. 2d 71.)

The devise in question is as unambiguous as any instrument might be. It states that upon the neglect or failure of the life tenant to perform the expressed duties, the *estate terminates* upon such default. It does not say that the estate would terminate upon re-entry or any other language that would indicate the establishment of a condition subsequent with right of re-entry.

We conclude that the estate in question was of *special limitation* in that, by its terms, it terminates automatically if a specified event occurs before the time at which the estate would otherwise terminate. Further, the estate created is one of *conditional limitation* in that the estate is determined by the mere happening of the event by which the limitation is measured and the estate passes to the person having the next expectant interest, without re-entry or claim. (Tiffany, Outlines of Real Property, §§ 63, 117; 1 American Law of Property, § 4.53-58; 31 C. J. S., Estates, § 120; 28 Am. Jur. 2d, Estates, § 142; *Seay v. Seay,* 384 S. W. 2d 466 [Ark.] *Bridgforth v. Gray,* 222 So. 2d 670 [Miss.].)

There is a fundamental distinction between an estate on condition and one on special limitation, in that, while in the former the words which provide for the termination of the estate on a contingency are not regarded as a part of the original limitation of the estate, but provide for the cutting off of the estate before its proper termination, and in the latter the words of contingency are regarded as part of the limitation itself so as to not cut off an estate previously limited, but merely naming an alternative limit to the duration of the estate. There are important practical results of the difference between an estate on condition and one of special limitation, as well. In the case of a special limitation, the contingency is a proper termination of the estate, and after the contingency has been occasioned, no estate can remain in the grantee or devisee; as a consequence, without re-entry or an equivalent act, the right of possession immediately vests in the grantor or the next succeeding person having the right to possession. Further, if the estate was one of condition, the

standing of a transferee of the reversion, or a remainderman, would permit no right to take advantage of the estate by such condition, while on special limitation, the transferee or remainderman has always been entitled to derive advantage from the termination of an estate by such limitation. (Tiffany, The Law of Real Property, § 217 [3rd ed. 1939].)

The real distinction, however, between a condition subsequent and a conditional limitation is that in the former the estate is *voidable* upon the election of the person in whose favor the condition is imposed, while in the latter the estate is *void* upon the occurrence of the event that would terminate the estate. (Kales Estates, Future Interests, § 243 [2d ed. 1920].) Therefore, while the appellant has presented a very ingenious and viable argument in this court that the estate in question was one of condition subsequent rather than conditional limitation, the fact remains that the appellee, by commencing this action to secure forfeiture of the estate, makes a discussion of the distinctions merely academic. Assuming, *arguendo*, that the estate created by the devise was one of condition subsequent and voidable at the election of the appellee, then, by seeking to re-enter and take possession by the affirmative act of commencing the case at bar, the estate would have become void by that election of the appellee. That rule was recognized in *Seay v. Seay*, supra, wherein the court stated:

"In the case at bar it makes no difference whether the provision in the deed requiring the life tenant to pay the taxes and insurance premiums is a condition subsequent, in which event the next taker would have to take affirmative action to terminate the life estate, or whether it is a limitation, in which case the life tenancy expires ipso facto upon the failure of the life tenant to comply with the provision of the limitation. This is true because, in the case at bar, those who have the next expectant interest have taken action to have the fee vested in them." (pp. 468, 469.)

The appellant cites numerous cases wherein equitable considerations were relevant to the cancellation of oil and gas leases for breach of the implied covenant to develop. (*Howerton v. Gas Co.*, 82 Kan. 367, 108 Pac. 813; *Alford v. Dennis*, 102 Kan. 403, 170 Pac. 1005; *Harris v. Morris Plan Co.*, 144 Kan. 501, 61 P. 2d 901.) However, this court finds no merit in the argument that an implied covenant in a lease is similar to an expressed condition in a will. As we stated above, where the testator has spoken in unambiguous terms, this court is without the authority to revise that intention.

As the life estate was to terminate upon the happening of the

events in question, this court may not now determine that the appellant is entitled to equitable considerations in the absence of some intention of the testator to that effect.

The judgment is affirmed.