No. 46,704

WILLIE G. COLLINS, *Appellant,* v. KANSAS MILLING COMPANY, and MILLS MUTUALS, *Appellees.*

(504 P. 2d 586)

Opinion filed December 9, 1972.

*Terry D. Watson,* of McCullough, Wareheim and LaBunker, of Topeka, argued the cause, and *George E. McCullough,* of the same firm, was with him on the brief for the appellant.

*Bryon Brainerd,* of Weigand, Curfman, Brainerd, Harris and Kaufman, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: This workmen's compensation case is here for the second time. In *Collins v. Kansas Milling Co.,* 207 Kan. 617, 485 P. 2d 1343, we reversed a finding against the claimant because he had not been given notice of a hearing in sufficient time to enable his counsel to be present for oral argument. On remand he was given such a hearing with a result which, while not quite the same as the previous result, was from his point of view equally unsatisfactory. Hence this second appeal.

The accident on which the claim is based occurred on October 27, 1967. Claimant testified that he was entering a pitch dark grain bin when he fell from a ladder some ten to twenty feet, landing on his back in one to two feet of wheat. Two of his fellow workers couldn't agree as to whether he then complained of the injury: one said he did no further work after his fall, had to be helped out of the bin, and then lay on the ground; the other said he worked in the bin, shoveled other grain after he got out, and didn't mention any injury until several days later.

The workmen's compensation examiner found that the claimant had failed to establish an accidental injury and denied compensation. The director found the contrary, and entered an award for temporary total disability. The district court, on its first consideration of the record, agreed with the examiner and found no accidental injury.

On remand, after our reversal, the district court's finding was that there had been an accidental injury, but that claimant's disability ended on December 20, 1967. In this appeal claimant urges that this finding was not based on substantial, competent evidence.

The finding was based in part on claimant's own testimony. He related that he was fired the day of the accident and his employer refused to authorize medical treatment. He attempted to secure medical treatment on his own, but the doctors he approached refused to treat him. He finally consulted counsel in Wichita, who arranged for him to see Dr. Ernest R. Schlacter. For about a week, that physician gave him shots, medication, and physical therapy of his back. On December 20, 1967, according to claimant, Dr. Schlacter released him to go back to work. Neither party introduced any firsthand evidence of Dr. Schlacter's diagnosis or findings.

A week later on December 27, 1967, at the behest of the respondent, claimant was examined by Dr. Albert W. Shiflet, an orthopedic surgeon of Wichita. In his report Dr. Shiflet concluded:

"Opinion: Insufficient objective findings to substantiate this patient's subjective complaints of low back pain. In my opinion, there is no present or permanent disability in Mr. Collins' back attributable to an accident such as he described as having occurred on 27 October, 1967."

About two weeks after that, on January 11, 1968, claimant saw Dr. M. E. Pusitz, an orthopedic surgeon of Topeka. In his report Dr. Pusitz's diagnosis was:

". . . Lumbosacral and sacro-iliac strain. Indications: Either manipula-

tion of the spine routine, or proper support, and physiotherapy and muscle education. Disability: At this time, there is a temporary total disability for heavy laboring type of work."

Finally, on April 24, 1968, claimant was examined by Dr. Eugene E. Kaufman, a "neutral" physician designated by the examiner. In his report Dr. Kaufman stated that he could find no organic injuries. As to subjective complaints, he reported that if claimant was distracted he wouldn't notice pounding on areas in which he claimed tenderness when fully aware of the doctor's manipulations. In his deposition Dr. Kaufman testified:

"Well, I can't say 100% this man is actually malingering, certainly. He, in my opinion, showed nothing that I could find anything objective as far as any organic disability is concerned. I think he's disabled by his symptoms, and what they are caused by, I think, is open to some speculation. I think once this lawsuit is settled he's going to be infinitely better."

In sum, the trial court had before it on one side (1) claimant's testimony that after a week of treatment his own doctor had released him on December 20 to go back to work, (2) Dr. Shiflet's finding of "no organic injury" a week later, and (3) Dr. Kaufman's strong intimation that claimant was malingering. On the other side it had Dr. Pusitz's finding of lumbosacral and sacroiliac strain. We think there was ample competent evidence to support the trial court's finding that claimant's disability ended no later than December 20. That being so, the finding cannot be disturbed on appeal. (*Coleman v. Rockwell Manufacturing Co.,* 206 Kan. 774, 482 P. 2d 52 [1971]; *Dolan v. Steele,* 207 Kan. 640, 485 P. 2d 1318 [1971]; *Schmidt v. Jensen Motors, Inc.,* 208 Kan. 182, 490 P. 2d 383 [1971]; 5 Hatcher's Kansas Digest, Workmen's Compensation, § 137; 9C West's Kansas Digest, Workmen's Compensation, § 1935.)

In addition to the foregoing argument as to the merits of his case, claimant complains bitterly of the procedural steps which led to the trial court's second consideration of the claim.

Our opinion in *Collins I,* supra, was filed on June 12, 1971. After receipt of the opinion but before the mandate was filed the Honorable Howard C. Kline, administrative judge of the Sedgwick county district court, set the matter for hearing before the Honorable Thomas C. Raum, Jr., on July 6, 1971, and notified claimant's counsel of the setting by telephone. Claimant requested a continuance, but Judge Kline refused to grant such a continuance unless claimant withdrew a demand for compensation which he had served pursuant to K. S. A. 44-512a.

Just when that demand had been served does not appear in the record, nor does the manner in which Judge Kline learned of it— claimant deduces that there must have been an ex parte communication to the judge from respondent's counsel. Be that as it may, it is apparent that claimant hoped that the statutory twenty days from his demand would elapse without payment or further judicial action. If so, the entire award might have become due and collectible in a separate action, and this proceeding might have become moot. (Compare *Casebeer v. Alliance Mutual Casualty Co.*, 203 Kan. 425, 454 P. 2d 511 with *Kissick v. Salina Manufacturing Co., Inc.*, 204 Kan. 849, 466 P. 2d 344. See, also, *Griffith v. State Highway Commission of Kansas*, 203 Kan. 672, 456 P. 2d 21.)

When Judge Kline refused the requested continuance claimant sought to achieve the same result by an action filed in the United States District Court for the District of Kansas. We do not know the grounds there alleged for relief, but on July 2, 1971, that court temporarily restrained the parties from proceeding further in this case until after July 12, 1971. The federal court declined to restrain Judges Kline and Raum, but the substantive effect of the order was a ten day stay of the state court proceedings. Unfortunately from the claimant's point of view, the stay also held in abeyance any obligations that might otherwise have arisen under K. S. A. 44-512a.

On July 13, 1971, upon the expiration of the federal stay, Judge Kline once again set the matter for hearing and notified counsel. This time the case was reassigned to Judge Robert T. Stephan, who had rendered the original decision. The hearing date was July 16, 1971.

Claimant's counsel immediately prepared and mailed for filing a document entitled "Motion for a Continuance and Disqualification of the Administrative Judge to Hear this Motion or Take Further Action Pertaining to this Appeal." The motion recited in substance the foregoing procedural steps taken since June 12, 1971, when our first opinion was filed, and alleged that if it were not granted a duplication of lawsuits would result. The motion also asked that the administrative judge disqualify himself from hearing the motion or rescheduling the cause. In support of this portion of the motion counsel submitted his own affidavit in attempted compliance with our disqualification statute, which now appears as K. S. A. 1971 Supp. 20-311d *et seq.*, and which had become effective two weeks

earlier on July 1, 1971. (Its amendment by Laws 1972, ch. 97 is not material.)

No action was taken on this double-barrelled motion until the scheduled hearing before Judge Stephan on July 16. There counsel conceded that his motion for a continuance was based solely on his desire to let his demand under 44-512a ripen into an irrefutable obligation. He made no claim that he was "not ready" for trial in the usual sense of being unprepared to present either the law or the facts. Indeed, considering the age of the case he could not have made such a claim with a straight face. As part of his argument on the motion claimant contended that his affidavit of bias and prejudice against Judge Kline, the administrative judge, should invalidate that judge's previous action in setting the case for trial, and a continuance should have been granted for that reason. Also, he urged that the disqualifying effect of the affidavit should have been extended to Judge Stephan, the trial judge, although he stated that he had no objection to Judge Stephan's hearing the case on the merits. The trial judge found that the matter had been regularly set and overruled the motion.

On appeal all of these objections to the trial court's reaching the merits when it did are urged as error. Paraphrasing his points on appeal, they are: (1) the affidavit of prejudice should have precluded the administrative judge from assigning the case and setting it for trial; (2) the setting of the case for trial by the administrative judge amounted to an overruling of the motion for continuance, and was done in defiance of the affidavit of prejudice; and (3) the bias of the administrative judge prevented the claimant from receiving a fair hearing on his motion for a continuance, depriving him of due process and the equal protection of the law.

As may be seen, all three of these points are interrelated. Each depends on the effect to be given to an affidavit of bias or prejudice directed solely at an administrative judge and not at the trial judge.

We recently examined at length the meaning and application of the disqualification statute, K. S. A. 1971 Supp. 20-311d *et seq.*, in *Hulme v. Woleslagel*, 208 Kan. 385, 493 P. 2d 541. We there held, *inter alia*, that "an affidavit to disqualify a judge for bias or prejudice must be made by the party litigant rather than by his attorney." (Syl.) The fact that the affidavit here was made by counsel and not by the party litigant made it insufficient on its face.

But even if claimant himself had made the affidavit it would still

have been insufficient because it was directed at the wrong judge. There was no suggestion of prejudice on the part of Judge Stephan, who heard the case on the merits—such an idea was expressly disclaimed. The affidavit was directed exclusively toward Judge Kline, whose sole function was to assign the case and schedule a trial date.

Under the statute, an affidavit directed against an administrative judge does not absolutely preclude him from taking further action. Instead, the statute requires the administrative judge, *after* the affidavit is filed, to assign the case to another judge—a requirement inconsistent with claimant's position that the administrative judge can take *no* action after an affidavit is filed. (We pass over the fact that in this case the assignment had been made on July 13, while the affidavit wasn't filed until July 14.)

Further, the statute keys the time for filing the affidavit to, among other things, the receipt of notice of "the judge to which the case is assigned or before whom the case is to be heard." (K. S. A. 1971 Supp. 20-311f.) What is clearly contemplated here is an affidavit against the judge who will hear the case on the merits. It is when the merits are to be reached that judicial bias or prejudice is most likely to affect substantive rights. It is those rights, after all, with which courts are primarily concerned, and which we believe the legislature intended to protect when it enacted the disqualification statute. (Although the *appearance* of fairness is important, too. See *Hulme v. Woleslagel,* supra, passim.)

Militating in the same direction is the limitation that "No party shall be granted more than one change of judge in any action." (K. S. A. 1971 Supp. 20-311f.) If, by filing an affidavit, a party had secured a new administrative judge to take care of preliminary administrative functions, he would be helpless if the case were later assigned for trial to a judge whom the party regarded as biased. Also, to have administrative judges pro tem to handle the assignment of preliminary matters in individual cases would wreak havoc with the district-wide calendar control sought to be accomplished through the functions of the administrative judge. We cannot believe the legislature intended either result.

In sum, we do not think the statute contemplates an affidavit directed against a judge acting solely in his capacity of administrative judge, and that if such an affidavit is filed it will not preclude that judge from proceeding with his purely administrative functions such as assigning the case or setting it for trial.

If it be suggested that bias on the part of an administrative judge may result in a precipitous, oppressive setting of a case, we would point to K. S. A. 60-240. Under that statute the trial court may "for good cause shown" grant a continuance "at any stage of the proceedings;" the grant or denial of a continuance is discretionary with the trial court in all cases. This is a codification of the rule recognized in this state for over one hundred years. See *Ed. Ass'n v. Hitchcock*, 4 Kan. 36 (1866); *State, ex rel., v. Showalter*, 189 Kan. 562, 570, 370 P. 2d 408 (1962).

The litigant who feels unduly hurried, then, may seek relief from the trial judge who, presumably, is free from bias conceived by the litigant to have motivated the administrative judge in making the premature setting. We summarized the state of affairs at this point in a lawsuit in *Fouts v. Armstrong Commercial Laundry Distributing Co.*, 209 Kan. 59, 495 P. 2d 1390, Syl. ¶¶ 1-3:

"1. Under the provisions of K. S. A. 60-240, the assignment of cases for trial and the granting or refusing of continuances rests in the sound discretion of the trial court; such discretion, however, is not without limitation and is subject to review.

"2. Where the effect, for practical purposes, of the denial of a motion for a continuance of a trial is to deprive a party of his day in court, a trial court's discretion is to be exercised in a sound and legal manner and not arbitrarily or capriciously and in ruling on a motion for continuance, under such conditions, a court must consider all attending circumstances, particularly such matters as the applicant's good faith, his showing of diligence or the absence thereof, previous proceedings and the timetable of the lawsuit.

"3. In seeking the continuance of a case assigned for trial it is incumbent upon the applicant to affirmatively show due diligence with respect to all grounds upon which the continuance is sought."

Applying those principles here, claimant's affidavit (even assuming it had been both signed by the litigant and filed before the administrative judge set the case) would not have prevented the administrative judge from proceeding to assign the case and set it for hearing in accordance with the applicable rules of court, as he did. Once this was done, claimant's motion for a continuance became a matter for determination by the trial judge in the exercise of his judicial discretion. If the motion had shown "good cause," its denial resulting in prejudice might have constituted an abuse of discretion subject to review here.

There were, however, no substantive grounds for a continuance alleged—the whole purpose of the motion was admittedly for mere delay, to gain for claimant a supposed tactical advantage in

a collateral matter. We have said that where the facts or circumstances are such as "to raise a judicial suspicion that the motion was made for mere delay, and to hinder the administration of justice, there is no abuse of discretion in denying the continuance." (*Powder Co. v. Bilby*, 104 Kan. 769, 180 Pac. 735, Syl. ¶ 2.) Here there was more than "judicial suspicion" of the motive for the motion, there was certain knowledge.

It follows that there was no disqualification of either the administrative judge or the trial judge to perform their respective functions, and that the refusal to grant a continuance was not error for any of the grounds alleged.

The judgment is affirmed.

APPROVED BY THE COURT.