No. 60,409

SUSAN POOLE, as surviving spouse and as mother and guardian of the three minor children of Gary Poole, deceased, *Appellant,* v. EARP MEAT COMPANY and ROCKWOOD INSURANCE COMPANY, *Appellees.*

(750 P.2d 1000)

Opinion filed February 19, 1988.

*Paul V. Dugan,* of Wichita, argued the cause and was on the brief for appellant.

*Michael T. Harris,* of Wichita, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This is a workers' compensation case. Susan Poole, surviving wife of Gary Poole, on behalf of herself and their three minor children, appeals the district court's finding that benefits must be denied pursuant to K.S.A. 1987 Supp. 44-501(d) because death was substantially caused by Poole's intoxication.

The relevant facts are as follows: Gary Poole was a six foot-one-inch, 180-pound, 29 year-old truck driver who was killed when his semi-truck overturned early one morning as he was returning home. Poole worked for the Earp Meat Company loading and delivering meat. Appellant's claim for death benefits through workers' compensation was denied because of evidence the accident was caused by Poole's intoxication. Poole was depicted as an athletic man who was proud of his body and therefore drank very little. He had never been seen to drink more than a beer or two.

Poole had suffered a back injury on the job about six months prior to his fatal crash and complained for weeks to his wife and co-workers that the pain of his injury caused him to be physically exhausted. A few days before his death, he began passing blood in his urine. On the Wednesday before the fatal accident, a co-worker called in sick, forcing Poole to make an extra run and thus work several hours longer than usual. Poole's Thursday shift caused him to get home around 2:00 a.m. Friday morning. He lay down next to his wife and told her, "I feel terrible—I'm so tired—I just don't feel well." That Friday morning he got up earlier than normal, around 7:30 a.m., to install a new washer and dryer in his home. He left for work around 12:30 that afternoon and appellant expected to see him at approximately 2:00 a.m. Saturday morning.

Poole arrived at the meat packing plant in Oklahoma City around 6:30 p.m. without incident. There was no evidence he had been drinking. He loaded his truck with 40,000 pounds of meat and headed back towards Wichita, traveling north on the four-lane Interstate Highway 35. At approximately one o'clock Saturday morning, his truck jackknifed and the weight of the trailer caused the truck to roll over on its top. Poole was thrown through the windshield, pinned under the truck, and killed almost instantly.

There were no witnesses to the accident, but officers talked to

several people who came immediately upon the scene. One witness stated Poole passed his car a short time before the accident, going about 70 mph on a downhill grade. No witnesses reported Poole had been driving in an erratic or unusual manner. Poole's speed was estimated on the accident report to be 65 mph before contact, and 40 mph at contact.

Officer Gary Brower found marks on the median which showed Poole had drifted left onto the median for about 375 feet. The tire marks showed Poole had then turned a hard right, as if he had suddenly awakened and tried to get back up on the road. The sharp turn caused the truck to jackknife and flip. The officers on the scene could find no mechanical defect to explain the accident. Nor could they find paint or any other indication that another vehicle had sideswiped Poole and caused him to go into the center median.

Inside the truck and on the ground around the truck the officers found some beer cans, both full and empty. There were three or four empty cans and about the same amount of full beers, still cool, some of them still in a sack. Poole's hands were greasy as if he had been working on his truck or someone else's vehicle. The officers did not notice any grease on the beer cans.

Poole should have passed the point where the accident occurred at about 7:30 p.m. Efforts to determine how he spent the six hours between the time he left the meat packing plant and the time of his accident were futile. Officer Brower concluded after his investigation that the cause of the accident was that Poole had gone to sleep.

Oklahoma has a policy of obtaining a blood alcohol reading on all fatalities to determine what percentage of fatalities are caused by alcohol. Poole's body was therefore transported to an emergency room at about 2:42 a.m. and a coroner examined the body. He noted the body smelled of alcohol, and in talking to a patrolman, he learned there were alcohol containers around the vehicle at the time of the accident. Trooper Brower had not noticed the body smelled of alcohol. The only smell he could detect was that of spilled diesel fuel. There was a notation on the traffic report, however, which indicated one of the officers had noticed the smell of alcohol.

The coroner drew blood with a syringe used for the express

purpose of withdrawing blood specimens for alcohol testing. There was no evidence the test was not performed in a proper and timely manner. The blood sample was sent to the state's forensic toxicologist, who normally tests blood samples from traffic accidents. He found no sign of tampering and no evidence of irregularities in testing. The blood was found to contain .13% by weight/volume of ethyl alcohol. The toxicologist was of the opinion that an alcohol level of .08% and above causes almost all drivers to be impaired.

After learning of the alcohol level, Officer Brower testified the accident could have been caused by alcohol and said in his opinion a person with a .13% alcohol level would have slower reactions and impaired response. He noted the impairment would be greater if the person was not used to the effects of alcohol.

Patrick Glynn, an independent forensic chemist, testified on behalf of appellant that it was not possible for a man of Poole's height and weight to have a .13% blood alcohol level from only three or four beers unless raw alcohol had contaminated the blood sample. His testimony was not mentioned in the briefs or at oral argument. We therefore find appellant has abandoned the use of Glynn's theory as a possible explanation for the test results.

Appellant met her burden under K.S.A. 1987 Supp. 44-501 to establish her right to compensation. The burden of proving a defense to the claim then shifted to the employer. Earp maintains Poole was not eligible for compensation because death resulted "substantially from the employee's intoxication . . . ." K.S.A. 1987 Supp. 44-501.

The administrative law judge denied compensation after the hearing, finding Poole's death was substantially caused by Poole's "excessive use of alcohol." The findings of fact provide:

"1. At the time of his accidental injury, on September 21, 1985, the Claimant's blood had an ethyl alcohol content of 0.13% weight per volume.

"2. The Claimant's blood-alcohol content was a result of the Claimant's deliberate and intentional ingesting of alcoholic liquids prior to driving.

"3. At the time of the accidental injury on September 21, 1985, and as a result of the Claimant's alcohol consumption, the Claimant's driving ability was very substantially impaired. This impairment included the Claimant's inability to drive his truck in a safe manner, and the Claimant's inability to remain fully alert while driving that truck on September 21, 1985.

"4. As indicated, the immediate cause of the Claimant's death was the accidental injury on September 21, 1985. However, that injury on September 21, 1985, was caused by the Claimant's intoxication *[sic]* of alcoholic liquid. As a result of his intoxication, the Claimant became inattentive while driving, resulting in the truck going out of control and wrecking."

The director of the workers' compensation division reversed the administrative law judge's order and awarded compensation. The reasons given for reversal are as follows:

"The Director finds the claimants herein should be awarded benefits as the evidence does not show that the decedent's injury and death was caused substantially by his intoxication. The evidence shows the decedent had a blood alcohol content of .13%, however, that does not address the question. The speculation the decedent may have fallen asleep because he was tired or because he was under the influence of alcohol does not address the question. While a blood alcohol content of .13% may constitute intoxication for purposes of laws regarding the regulation of motor vehicle driving, that percentage of blood alcohol does not raise a presumption that the individual in a workers' compensation case was intoxicated. The Workers' Compensation Law does not provide for denial of benefits for consuming alcohol nor for having a blood alcohol content of .13%, but rather provides for the denial of benefits if an individual's accident is caused substantially by his intoxication. There is no evidence in the record to show the decedent was intoxicated. There is no evidence in the record to indicate that a blood alcohol content of .13% would automatically mean that the individual was acting in an intoxicated manner or would be unable to control himself in an apparently normal manner.

"Since our law must be construed to effect the purposes of the Act and pay compensation where reasonably possible to do so, our law cannot at the same time be construed to assume that an individual's accident is caused by his intoxication when there is no evidence of intoxication other than the arbitrary standard established for purposes of law other than workers' compensation."

On December 9, 1986, the district court reversed the director's findings and appellant was once again denied compensation. The district court found as follows:

"Having heard the arguments and statements of counsel, having reviewed the file and record generated below, and having considered the matter fully, the Court finds and concludes, for reasons set forth in the record of December 9, 1986, that the claimant's accidental injury and death was substantially caused by his intoxication and compensation is hereby disallowed. The findings and conclusions of the Administrative Law Judge are hereby adopted as the findings and conclusions of this Court, and said Award of the Administrative Law Judge is attached hereto and incorporated herein by reference as though fully set out."

The Court of Appeals affirmed the ruling of the district court in

an unpublished opinion filed September 10, 1987, and we granted review.

It is a crime in Kansas for a person with an alcohol level of .10% or more to drive a vehicle. K.S.A. 1987 Supp. 8-1567. Both Kansas and Oklahoma, for purposes of criminal prosecution for violation of laws relating to operation of a vehicle while under the influence of alcohol, presume that an alcohol level of .10% or more is prima facie evidence the defendant was under the influence of alcohol to a degree that rendered him incapable of driving safely. K.S.A. 1987 Supp. 8-1005; Okla. Stat. tit. 47 § 756(c) (1988 Supp.).

Appellant contends the issue in this case is whether the presumption of intoxication for purposes of criminal prosecution can be adopted in a workers' compensation case in order to deny benefits. Earp denies that the administrative law judge based his decision on such a presumption and argues the sole issue on appeal is whether there is substantial evidence to support the district court's decision.

We find there is no evidence the administrative law judge based his decision on a presumption of intoxication under K.S.A. 1987 Supp. 8-1005, and therefore the issue before us is whether the district court erred in its finding that Poole's death was caused substantially by his intoxication. The scope of appellate review for workers' compensation cases is that applicable in other civil cases. K.S.A. 77-623. If we find, when viewing the evidence in the light most favorable to the prevailing party, that there is substantial competent evidence supporting the district court's factual findings, we are bound by those findings. *Houston v. Kansas Highway Patrol,* 238 Kan. 192, 194, 708 P.2d 533 (1985), *overruled on other grounds Murphy v. IBP, Inc.,* 240 Kan. 141, Syl. ¶ 2, 727 P.2d 468 (1986).

The foregoing rule is modified by our firm commitment to a rule of liberal construction of the workers' compensation statutes to effect legislative intent and award compensation to a worker where it is reasonably possible to do so. *Brinkmeyer v. City of Wichita,* 223 Kan. 393, 396, 573 P.2d 1044 (1978); *Thuillez v. Yellow Transit Freight Lines,* 187 Kan. 618, 621-22, 358 P.2d 676 (1961); *Matlock v. Hollis,* 153 Kan. 227, 232, 109 P.2d 119 (1941). The district court is bound by the rule of liberal construction and

if it fails in its application, this court has the duty to correct that failure. *Bender v. Salina Roofing Co.*, 179 Kan. 415, 422, 295 P.2d 662 (1956).

Our Workers' Compensation Act does not define "intoxication." Black's Law Dictionary 738 (5th ed. 1979), states the term comprehends that situation where,

"by reason of drinking intoxicants, an individual does not have the normal use of his physical or mental faculties, thus rendering him incapable of acting in the manner in which an ordinarily prudent and cautious man, in full possession of his faculties, using reasonable care, would act under like conditions."

Our Alcoholism and Intoxication Treatment Act defines an intoxicated individual as "an individual whose mental or physical functioning is substantially impaired as a result of the use of alcohol." K.S.A. 1987 Supp. 65-4003(10).

Arthur Larson in 1A Larson's Workman's Compensation Law § 34.10 (1985) notes that the question of what constitutes intoxication is "a very old one, and one that has never received a satisfactory answer. But when the law sets out to deny compensation on the ground of intoxication, the matter of definition becomes one of extreme gravity."

Larson states it is well established that proof of intoxication does not follow from the sole evidence that the claimant had a few drinks, or that he smelled of liquor, or from the discovery of an empty liquor container, but that a combination of such evidence might support a finding of intoxication. Evidence of the alcohol level in the blood is generally admissible. 1A Larson, § 34.12. Blood tests taken to determine intoxication pursuant to a motor vehicle statute are generally admissible unless the statute specifically provides the results may not be used as evidence in a civil action. See *Rourke v. Carl's Drug*, 56 App. Div. 2d 202, 392 N.Y.S.2d 498 (1977); *R. W. Rine Drilling Company v. Ferguson*, 496 P.2d 1169 (Okla. 1972).

Even if Poole was found to have been "intoxicated," Earp must still prove his death was substantially *caused* by that intoxication. If, for example, Poole's tires had exploded, that would have been the substantial cause of his death and it would not matter how intoxicated Poole was at the time. Appellant claims the substantial cause of Poole's death was that he fell asleep and notes there is no defense under K.S.A. 1987 Supp.

44-501(d) whereby she may be denied benefits because her husband was so tired he fell asleep.

Most jurisdictions, wherever possible within the plain meaning of the statute, require the defense of intoxication to be clearly made out before finding a claim can be denied. 1A Larson's Workman's Compensation Law § 34.31. The only applicable Kansas case regarding the intoxication issue is *Schmidt v. Jensen Motors, Inc.,* 208 Kan. 182, 490 P.2d 383 (1971). *Schmidt* was decided under K.S.A. 1970 Supp. 44-501(b), which required compensation to be disallowed if the injury was found to have resulted *"solely* from the worker's intoxication." (Emphasis added.)

The deceased in *Schmidt* was a traveling salesman who had appeared sober when visiting his last contact, but was killed an hour or two later in a crash in which it was estimated he was driving around 90 mph. The highway was wet and there was no evidence of intoxication except for a test which showed the deceased's blood alcohol level to be .162%.

In *Schmidt,* the district court upheld compensation. Thus we were required to consider the evidence in the light most favorable to the claimant and look only for substantial evidence supporting the finding. We noted the blood sample was drawn by a mortician, rather than a physician or qualified medical technician. The chief chemist with the lab services division of the State Board of Health testified it was his opinion a .162% alcohol level would not cause everyone to be intoxicated, and a patrolman testified that, although alcohol was probably a contributing circumstance to the accident, he could not say it was the sole cause. We thus concluded the evidence was sufficient to sustain the district court's negative finding that the death was not caused solely by reason of intoxication.

The case at bar is different in several important respects. The district court made a *positive* finding that Poole's death was "substantially caused by his intoxication." We therefore have the duty to look at the evidence supporting the employer, rather than the claimant.

In *Clay v. Bituminous Cas. Co.,* 401 So. 2d 1257 (La. App.) *writ of review denied* 409 So. 2d 616 (La. 1981), a truck driver with an alcohol level of .15% was injured when he swerved off

the highway. The appellate court had earlier held the presumption of intoxication, under the state's criminal statute, when a blood alcohol level is over .10%, is inapplicable to civil cases, although evidence of the alcohol level might still be submitted. The appellate court found the district court was not in clear error in finding the plaintiff was intoxicated and the intoxication caused the accident, and affirmed denial of benefits despite testimony by the driver that he had consumed only three beers. Benefits may be denied under Louisiana statute if an accident is found to be "caused by" intoxication. La. Rev. Stat. Ann. Art. 23:1081 (West 1985).

At the time of *Schmidt*, under K.S.A. 1969 Supp. 8-1005, a person was not presumed to be criminally liable for driving while intoxicated unless the alcohol concentration in his blood was .15% or more. In *Schmidt*, the deceased's employer argued the blood test proved intoxication was the cause of the fatal accident. Claimants did not object to the use of the criminal statute for a presumption of intoxication, but instead pointed out such a presumption was rebuttable. The issue of whether the presumption of intoxication was applicable to a workers' compensation case was neither raised nor decided in *Schmidt*. It is at issue here. We hold the presumption of intoxication provided for in K.S.A. 1987 Supp. 8-1005 is inapplicable to workers' compensation cases. However, evidence of the blood alcohol content of a claimant is relevant and thus admissible on the issue of the cause of the accident, but does not give rise to a presumption of intoxication.

In *Driscoll v. Great Plains Marketing Co.*, 322 N.W.2d 478 (S.D. 1982), the appellate court upheld denial of a compensation claim when an employee with an alcohol level of .16% had a car accident on an icy curve of a country road, holding the hearing officer was not clearly erroneous in finding the employee's intoxication was the "proximate cause" of the accident.

It is in the appellee's favor that there is more evidence of intoxication in the case before us than in *Schmidt*. Empty beer cans were found in and around the truck. The blood test was taken by a medical doctor under approved circumstances, and he testified Poole smelled of alcohol. The deceased's relatives testified Poole was not accustomed to the effects of alcohol, and

there were no contributing factors such as bad weather or mechanical failure to explain the accident.

In *Schmidt* the salesman was driving much faster and with a higher alcohol level than Poole. There was testimony in *Schmidt* that not everyone would necessarily be intoxicated at an alcohol level of .162%. There is, however, evidence that all individuals with an alcohol level of .10% or above are impaired to some extent. See *State v. Larson,* 12 Kan. App. 2d 198, 202-03, 737 P.2d 880 (1987).

A major difference between the cases is that under the amended statute the employer now is required only to prove the death was caused *substantially* by alcohol. *Schmidt* indicates the evidence concerning the pain and exhaustion experienced by Poole from a previous injury on the job would probably have been sufficient to hold Poole's death was not caused *solely* by intoxication. In *Curtis v. Cross Bay Excavating Co.,* 65 App. Div. 2d 638, 409 N.Y.S.2d 279 (1978), an intoxicated employee died in an accident. Because his leg had been rendered unstable in a previous work-related injury, the New York court, under a statute requiring intoxication to be the sole cause of the accident, allowed recovery.

The word "substantial" is not defined under our workers' compensation statute. The word is defined in Black's Law Dictionary 1280 (5th ed. 1979), as something "[o]f real worth and importance . . . . Something worthwhile as distinguished from something without value or merely nominal." Earp contends the legislature's change of *solely* to *substantially* was a direct response to the holding in *Schmidt* because the burden of proof in proving an accident was caused *solely* by intoxication was seen to be almost insurmountable.

Arkansas had at one time a statute which required the employer to prove an accident was caused solely by intoxication. In *Jones Truck Lines v. Letsch,* 245 Ark. 982, 436 S.W.2d 282 (1969), the claimant truck driver ran off the road. A doctor testified that medication and an earlier head injury could have contributed to the accident by causing the claimant to have become confused. Intoxication was thus held not to be the sole cause of the accident and benefits were awarded.

The Arkansas legislature later amended the statute to read

*substantially* instead of *solely*. Ark. Code Ann. tit. 11 § 9-401 (1987). In *Country Pride v. Holly*, 3 Ark. App. 216, 624 S.W.2d 443 (1981), the workers' compensation commission found a claimant's injury was "substantially occasioned" by intoxication. The claimant had a history of alcoholism and smelled of intoxicants at the time of his injury. The district court reversed, but the appellate court found substantial evidence existed to support the commission's finding, reversed the district court, and denied compensation.

California's workers' compensation statute requires the injury to be "caused by" intoxication. Cal. Labor Code § 3600(a)(4) (West 1988 Supp.). This was construed in *Smith v. Workers' Compensation Appeals Bd.*, 123 Cal. App. 3d 763, 176 Cal. Rptr. 843 (1981), to require the injury to be "substantially" caused by intoxication. In *Smith*, the claimant's husband was killed in a car accident while returning from a job site. He was found to have an alcohol level of .25% and had been observed drinking earlier in the day. The California court held that, although a blood alcohol level of .25% does not in itself establish that intoxication caused the injury, there was sufficient evidence to support the board's finding that death was caused substantially by intoxication despite evidence that the weather was bad, the road was bad, and the deceased had appeared sober and coordinated to his coworkers.

Even though we give the Workers' Compensation Act a liberal construction in favor of the worker as required, we find the alcohol content of Mr. Poole's blood, coupled with the smell of alcohol, the empty beer cans, and other evidence, to be sufficient substantial competent evidence to support the district court's finding that the fatal accident was substantially caused by Poole's impairment due to intoxication.

The decision of the Court of Appeals affirming the district court is affirmed.