(324 P.3d 306)
No. 110,025

BRENDA YOUNG, *Appellee,* v. GREAT BEND COOPERATIVE ASSN. and TRIANGLE INSURANCE CO., *Appellants.*

Opinion filed April 18, 2014.

*Eric T. Lanham* and *Douglas M. Greenwald,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellants.

*Lawrence M. Gurney,* of Lee, Gurney & Hess, of Wichita, for appellee.

Before LEBEN, P.J., GREEN and HILL, JJ.

HILL, J.: Great Bend Cooperative Association and its insurer, Triangle Insurance Company, argue that the Workers Compensation Board erred when it held they failed to prove the impairment defense in this workers compensation case. The Co-op contends Young, suffering from adult-onset asthma, was not entitled to benefits because she was a smoker and had smoked crack cocaine in the past. Because the Co-op has failed to prove Young was impaired at the time of her injury, we hold the Board did not err. We affirm.

*Young started work during harvest.*

The facts are undisputed. Brenda Young first worked as a scale house operator for Great Bend Cooperative during the 2009 fall harvest. That job did not involve open exposure to airborne grain dust. The next fall, Young returned to work for the Co-op, this time as a grain elevator operator from August 2010 until October 2010. This work exposed her to grain dust.

In October 2010, Young developed a constant cough and fever. She sought medical treatment from a local health clinic. The treating physician prescribed inhalants and ordered chest x-rays. The

next day, Young notified the Co-op of her symptoms and the medical treatment she had received. The employer sent Young to Dr. Keener, who separately prescribed inhalants and referred Young to Dr. Gerald Kerby, a pulmonologist.

Prior to this time, Young had no breathing or upper respiratory problems. Young smoked about half a pack of cigarettes a day for 2 years before her difficulties at the Co-op. Young stopped smoking cigarettes after she developed her breathing difficulties in October 2010. Young also admitted she had smoked crack cocaine twice a month from 2003 until 2006 but maintained she had not smoked illegal drugs since 2006. Young has not worked since October 2010. The parties stipulated to October 22, 2010, as the date of accident.

Dr. Kerby examined Young twice. After conducting some tests, Dr. Kerby concluded Young had adult-onset asthma. He testified that the grain dust "triggered" Young's asthma but attributed the cause of Young's asthma equally to her history of smoking cigarettes or crack cocaine—both respiratory irritants—and her exposure to dust while employed at the Co-op. Dr. Kerby determined Young had a 20 percent whole person impairment of function due to her asthma and apportioned 50 percent of Young's functional impairment to smoking and "lifestyle" and the remaining 50 percent to grain dust exposure.

Young sought workers compensation benefits for the respiratory injury she allegedly sustained due to her exposure to grain dust. The Co-op raised the impairment defense found in K.S.A. 2010 Supp. 44-501(d)(2), alleging Young was not entitled to compensation because of her history of smoking tobacco and crack cocaine.

*We review the administrative agency history.*

Rejecting the impairment defense raised by the Co-op, the administrative law judge entered an award granting Young permanent partial disability benefits. After noting Young last smoked crack cocaine in 2006 and had no symptoms of asthma until she started working for the Co-op in 2010, the ALJ found the causal connection between smoking crack cocaine 4 years earlier and the development of her asthma was speculative. Moreover, the ALJ ruled there was no evidence to support the requirement in the statute

that a claimant's illegal drug use "must *both* cause impairment *and* be contemporaneous with the accident." The ALJ also found Young's prior tobacco use was lawful, did not impair her ability to perform the duties of her job, and was more akin to a preexisting condition or disability. The Co-op appealed to the Workers Compensation Board.

The Board affirmed the award, holding the Co-op did not meet its burden to prove the impairment defense. Citing *Wiehe v. Kissick Construction Co.*, 43 Kan. App. 2d 732, 232 P.3d 866 (2010), as authority, the Board concluded K.S.A. 2010 Supp. 44-501(d)(2) required that the "respondent must demonstrate claimant was 'impaired' within the meaning of the statute and that claimant's injury, disability or death was 'contributed to' by claimant's use of alcohol or drugs."

The Board found the Co-op did not prove Young was "impaired" as that term is defined in K.S.A. 2010 Supp. 44-501(d)(2) because:

- there was no evidence of any concentration of crack cocaine in Young's body when her injury occurred, and
- Young had not experienced any symptoms of asthma before working for the Co-op in 2010.

Finally, the Board found the Co-op provided no persuasive authority that the legislature intended to include tobacco or tobacco smoke as an applicable drug, chemical, or other compound to which the impairment defense could apply.

*The issue in this appeal is the same.*

The Co-op maintains that it met its burden of proof. In its view, Dr. Kerby's uncontroverted medical testimony that Young's prior use of smoking tobacco and crack cocaine "contributed" to the development of her adult-onset asthma relieved it from any liability for her disability. It argues that under the plain meaning rule established in *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607-08, 214 P.3d 676 (2009), the Board should have construed the first sentence of the impairment defense differently.

*Our rules of review*

Review of this issue only concerns whether the Board correctly construed and applied K.S.A. 2010 Supp. 44-501(d)(2). In such cases, appellate courts have unlimited review of questions involving the interpretation or construction of a statute, owing " '[n]o significant deference' " to the agency's or the Board's interpretation or construction. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 457, 228 P.3d 403 (2010). Moreover, when an appellant alleges the Board erroneously applied the law to undisputed facts, an appellate court has de novo review of the issue. *Craig v. Val Energy, Inc.*, 47 Kan. App. 2d 164, 166, 274 P.3d 650 (2012), *rev. denied* 297 Kan. 1244 (2013). Finally, to the extent that a claimant's argument relates to the Board's interpretation and application of a worker's compensation statute, this court shall grant relief only if it determines that "the agency has erroneously interpreted or applied the law." K.S.A. 2013 Supp. 77-621(c)(4).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom*, 289 Kan. at 607. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013). In *Bergstrom*, the Kansas Supreme Court held:

"When a workers compensation statute is plain and unambiguous, this court must give effect to its express language rather than determine what the law should or should not be. The court will not speculate on legislative intent and will not read the statute to add something not readily found in it. If the statutory language is clear, no need exists to resort to statutory construction." 289 Kan. at 607-08.

However, even if the statutory language is clear, appellate courts must consider various provisions of an act in pari materia with a view of reconciling and bringing the provisions into workable harmony if possible. And the courts must construe statutes to avoid unreasonable or absurd results and presume the legislature does

not intend to enact meaningless legislation. *Northern Natural Gas Co.*, 296 Kan. at 918.

*Is the impairment defense applicable in this case?*

At the time of Young's accident, K.S.A. 2010 Supp. 44-501(d)(2) stated:

"The employer shall not be liable under the workers compensation act where the injury, disability or death was contributed to by the employee's use or consumption of alcohol or any drugs, chemicals or any other compounds or substances . . . . In the case of drugs or medications which are available to the public without a prescription from a health care provider and prescription drugs or medications, compensation shall not be denied if the employee can show that such drugs or medications were being taken or used in therapeutic doses and there have been no prior incidences of the employee's impairment on the job as the result of the use of such drugs or medications within the previous 24 months. It shall be conclusively presumed that the employee was impaired due to alcohol or drugs if it is shown that at the time of the injury that the employee had an alcohol concentration of .04 or more, or a GCMS confirmatory test by quantitative analysis showing a concentration at or above the levels shown on the following chart for the drugs of abuse listed: . . . ."

One can see that the first sentence of this statute states that the employer is not liable for workers compensation benefits where the worker's use or consumption of alcohol, drugs, chemicals, compounds, or substances *contributed* to the injury, disability, or death of the worker. The legislature included the term "contributed" as the employer's standard of proof in 1993 after amending the 1967 standard of proof requiring that the injury to the worker resulted " 'solely from his intoxication' " by changing the word "solely" to "substantially" in 1974. *Wiehe*, 43 Kan. App. 2d at 743 (quoting *Foos v. Terminix*, 277 Kan. 687, 697-98, 89 P.3d 546 [2004], for the explanation of the legislative history of the impairment defense).

The second sentence of the statute provides that in those instances of therapeutic doses where the worker has taken either over-the-counter or prescription drugs for medical purposes, the worker must show there were no prior incidences of the worker's impairment on the job because of the use of such drugs or medications. That scenario does not fit here. It is important to note at

this point that had it wanted to, the legislature could have listed tobacco or tobacco smoke in this sentence.

Finally, the third quoted sentence of the impairment defense, as amended in 1993 and 2000, creates a conclusive presumption of impairment if a worker's chemical tests show amounts of alcohol or drugs in excess of the statutory levels *when the worker was injured*. See L. 2000, ch. 160, sec. 5; L. 1993, ch. 286, sec. 24. So, if, for example, a worker had a blood-alcohol concentration greater than .04 at the time of his or her injury, that is conclusive proof of impairment.

Along this same line, a prior ruling by a panel of this court is instructive. In *Wiehe*, the panel addressed whether the employer had met its burden showing that the worker's injury or disability was contributed to by his use of marijuana, as evidenced by a positive drug test at a level that under K.S.A. 2009 Supp. 44-501(d)(2) conclusively *presumed the worker was impaired at the time of the accident*. That alone did not necessarily prove that the worker's impairment was the cause of his injury.

In discussing the relationship between the employer's burden to show that the claimant's use of drugs *contributed* to the injuries and the conclusive presumption of impairment provision in the statute, the panel found:

"[A] conclusive presumption of impairment does not eliminate the employer's burden to show that an employee's injury, disability, or death was contributed to by the employee's use or consumption of alcohol or any drugs, chemicals, or any other compounds or substances under K.S.A. 2009 Supp. 44-501(d)(2)[;] it does allow the employer to surmount a hurdle to meet the impairment exception under 44-501(d)(2)." *Wiehe*, 43 Kan. App. 2d at 744.

*Wiehe* clearly indicates that for an employer "to meet the impairment exception" under K.S.A. 2010 Supp. 44-501(d)(2) it must prove two things. 43 Kan. App. 2d at 744. The employer must show:

- the worker was impaired within the meaning of K.S.A. 2010 Supp. 44-501(d)(2) at the time of the injury; and
- the impairment contributed to the worker's injury or disability.

The *Wiehe* court noted it is simply easier for the employer to prove the worker was impaired if the worker was statutorily impaired. 43

Kan. App. 2d at 744. "Once it has been established that the employee was [statutorily] impaired under 44-501(d)(2), no additional evidence or argument can overcome that fact." *Wiehe*, 43 Kan. App. 2d at 744.

An unpublished opinion from another panel that relied upon *Wiehe* clarified the interactions of these principles. In *Hicks v. Butler Transport, Inc.*, No. 109,844, 2013 WL 6594296, at *3-4. (Kan. App. 2013) (unpublished opinion), the panel affirmed the appeals board's decision approving a workers compensation award to a truck driver even though his blood test indicated there were cocaine metabolites greater than the statutory limit in his blood. The panel ruled that Butler Transport was required then to link Hicks' impairment to his injuries and, since it did not, Hicks was entitled to benefits. 2013 WL 6594296, at *4.

Here, Dr. Kerby opined, "So you know, I can't say that one is more important than the other. In fact I said it was 50/50. I can't really dissect out that one was more important. I think they were both factors." He then proceeded to apportion the rating as he would for a preexisting condition.

The Kansas Supreme Court has always held the statute required a showing of impairment *at the time of accident*. In *Schmidt v. Jensen Motors, Inc.*, 208 Kan. 182, Syl. ¶ 1, 490 P.2d 383 (1971), the court first interpreted the intoxication provision in K.S.A. 44-501(b) and held that employers "have the burden of establishing that the injury to or death of the workman results solely from his intoxication." Similarly, in *Poole v. Earp Meat Co.*, 242 Kan. 638, Syl. ¶ 4, 750 P.2d 1000 (1988), the court interpreted K.S.A. 1987 Supp. 44-501(d) and held: "To defeat a workers' compensation claim based on claimant's intoxication, an employer must prove not only that the claimant was intoxicated, but that such intoxication was the substantial cause of the injury." See *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 285, 899 P.2d 1058 (1995) (same). And in *Foos*, the court interpreted the same language at issue here and held that the employer had established the worker was impaired due to alcohol *and* that substantial evidence supported the administrative law judge's conclusion that the worker's consumption of alcohol contributed to his injuries. 277 Kan. at 700.

If we were to rule as the Co-op suggests and no longer construe the provisions of the impairment defense in pari materia, we would need to rewrite the statute. See *Northern Natural Gas Co.*, 296 Kan. at 918. We see no language in the statute that leads us to conclude that if at some time in the past a worker's blood test levels exceeded the statutory limits for cocaine, as an example, that the legislature intended the conclusive presumption of impairment provision would apply and thus bar recovery of any benefits. To the contrary, the statute calls for proof of *impairment and contribution* to the injury.

We view this case to be more like a worker with a preexisting condition. Given the undisputed evidence that Young had not experienced any asthma symptoms prior to October 2010, coupled with Dr. Kerby's opinion that had Young not been a smoker she "might have tolerated" the grain dust, we view the Co-op's suggested reading of the statute would in essence create an entirely new statutory scheme. Such a view would prohibit workers compensation benefits if both the employer and worker were unaware at the time the worker was hired that the worker's prior drug or tobacco use resulted in the worker having a predisposition to an ailment that could arise from that preexisting condition being "triggered" by the employment conditions. We do not agree with this view of the statute.

Here, it is undisputed that the conclusive presumption of impairment under K.S.A. 2010 Supp. 44-501(d)(2) did not apply to Young because there was no evidence introduced showing blood levels of any drug. More importantly, the record is devoid of any evidence that Young was impaired due to alcohol, drugs, chemicals, or any other compounds or substances in her system at the time of the accident that would support a finding of impairment. Cigarette smoking, a legal activity, is not on that list. In fact, the Co-op concedes it "is not alleging on-the-job impairment as a basis for the drug defense but instead is alleging that prior (as opposed to contemporaneous) use or consumption of drugs, chemicals compounds or substances 'contributed to' the injury or disability." Without any evidence of contemporaneous impairment, either shown through the parameters establishing statutory impairment

or other substantial evidence, the affirmative defense under K.S.A. 2010 Supp. 44-501(d)(2) did not apply to Young's claim.

The Board did not err. Affirmed.