NOT DESIGNATED FOR PUBLICATION

No. 127,306

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SCOTT SUITTER,
*Appellant*,

v.

JOHNSONVILLE SAUSAGE LLC and ZURICH AMERICAN INSURANCE CO.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Submitted without oral argument. Opinion filed February 14, 2025. Reversed and remanded.

*Brad E. Avery*, of Avery Law Firm, of Topeka, for appellant.

*John E. Ryan Jr.*, of Evans & Dixon, LLC, of Kansas City, Missouri, for appellees.

Before HURST, P.J., ISHERWOOD and PICKERING, JJ.

PER CURIAM: Scott Suitter seeks review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., of a determination made by the Kansas Workers Compensation Appeals Board (the Board). The Board held that Suitter willfully refused to take a postinjury drug test that the policies of his employer, Johnsonville Sausage (Johnsonville), clearly authorized it to require and such refusal resulted in Suitter's forfeiture of his workers compensation benefits pursuant to K.S.A. 44-501(b)(1)(E). Suitter claims that the Board based its decision on a determination of fact unsupported by substantial evidence when viewed in light of the record as a whole and that it also misapplied the law. Johnsonville disagrees and argues that the Board's decision is

1

supported by substantial competent evidence. For the reasons explained below, we find Suitter's claim persuasive and reverse the Board's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Suitter operated a truck for Johnsonville to move trailers between loading bays, performed maintenance, and was responsible for training new drivers and warehouse employees. Over the course of Suitter's standard 10-hour workdays, he completed roughly 50 to 75 trips in the truck on mostly gravel roads that were susceptible to potholes. The trucks were designed to have air cushions in the seats to minimize the impact drivers experienced while traversing the gravel roads, but the only truck available to Suitter during the course of his employment had a defective air cushion that was unable to retain air.

When Suitter accepted Johnsonville's offer of employment, he received a copy of its employee handbook which outlined a portion of the company's various policies. One section specifically advised that when "'[m]embers are injured on the job, are involved in an injury on the job, appear to be under the influence or are involved in an incident where company property is damaged,'" they are required to submit to drug and alcohol tests.

In November 2020, Suitter began to experience lumbar pain that radiated to his knee and impeded his ability to walk. He reported the issue to his manager at Johnsonville and sought treatment on his own from Dr. Heather Myers. Dr. Myers recommended that Suitter take time off work to see whether his condition improved and issued a work restriction that enabled him to do the same.

Suitter attended a follow-up appointment with Dr. Myers two weeks later and reported that while he did note some improvement with rest, he continued to experience pain on the left side of his back. Dr. Myers examined Suitter, then restricted him from

2

work until he could be evaluated by an appointed workers compensation physician. Suitter originally abided by Dr. Myers' restriction, and Johnsonville gave him time off. However, Suitter eventually opted to return to work in a limited capacity, training new employees in the warehouse, while he waited for an evaluation by the appointed workers compensation physician.

Johnsonville eventually scheduled an appointment for Suitter at the Cotton O'Neil Work Care Clinic in Topeka. The day before the appointment, Suitter met with his team manager and Johnsonville's health and safety manager, Randi Stahl, to discuss the appointment. While drug testing is purportedly part of Johnsonville's standard practice for work-related injuries, Stahl did not inform Suitter that he would be required to submit to a drug test at the appointment. Even though Suitter's back issue was yet to be designated a workplace injury by Johnsonville, he was still subject to the company's drug testing policy because he claimed the injury was work-related.

The day of the appointment, Suitter met Stahl in the parking lot of the clinic, and the two walked in together. While in the waiting room, Suitter asked Stahl if he could retrieve his cellphone from his truck because he believed it contained pertinent information for his exam, such as important dates and pictures that were relevant to his injury. Stahl responded that it was unnecessary because Suitter previously sent the dates and pictures to her phone. When Suitter was called back to the exam room, however, Stahl remained behind.

The medical assistant that accompanied Suitter to the exam room asked him basic biographical questions and then directed the discussion toward his injury. Suitter told her that he needed to bring Stahl back to the room so they could consult the notes about his injury that were saved on her phone. Suitter wanted access to his notes because he was aware of coworkers who were denied workers compensation benefits because they provided the wrong information during their medical evaluations. The medical assistant

responded that Stahl was not permitted to join them in the exam room, so Suitter told her that he needed to retrieve his own phone from his truck. As Suitter prepared to leave the exam room, the medical assistant informed him that if he chose to leave at that juncture his drug test would be documented as a positive result.

Suitter exited the exam room anyway and asked Stahl whether a drug test was standard practice. Stahl provided an affirmative response, so Suitter attempted to explain that he needed the information from his phone. Stahl told him she could pull the information up on her phone, but Suitter grew increasingly upset and started to leave the clinic. Stahl warned him that if he left, the drug test would be considered either a refusal or incomplete. Suitter disregarded the warning, got in his truck, and drove home. Johnsonville terminated Suitter's employment following his refusal to submit to the drug test.

Suitter initiated a workers compensation case and challenged the grounds for his termination. Following a thorough litigation of the matter, the administrative law judge (ALJ) found that Johnsonville properly concluded that Suitter willfully refused to submit to the drug test and as a result, he forfeited his right to benefits available under the Workers Compensation Act (Act). The Board affirmed the ALJ's decision.

Suitter now brings his case before this court for a determination of whether the Board erred in finding that his conduct constituted the refusal of a drug test that was clearly authorized by Johnsonville's policies and whether it properly applied the provisions of the Act which pertain to his case.

I. *Whether the Board erred in finding that Suitter refused to submit to a chemical test and thereby forfeited benefits he may have been entitled to under the Act for his work-related injury*

The KJRA governs this court's review of cases arising under the Act. K.S.A. 44-556(a). The standard of review varies depending upon the issue raised. See K.S.A. 77-621. When an appellate court is asked to analyze a question of fact in a workers compensation case, its review is limited to a determination of whether the record, when viewed as a whole, demonstrates that the Board's findings of fact are supported by substantial evidence. "Substantial evidence" is understood to mean that evidence which possesses "'something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved.'" *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 216, 364 P.3d 1206 (2015). When this court reviews evidence, it does so in a light most favorable to the prevailing party. We decline to reweigh the evidence and will not evaluate the credibility of witnesses. The Board's findings will be upheld even if there is evidence in the record to support contrary findings. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 514-15, 154 P.3d 494 (2007).

When the question before us is whether the Board erroneously applied the law to undisputed facts, then we exercise de novo review. *Mera-Hernandez v. U.S.D. 233*, 305 Kan. 1182, 1185, 390 P.3d 875 (2017). Typically, resolution of such claims requires that we undertake an interpretation of the Act, as well as the administrative regulations adopted to implement the Act's provisions. Those measures are also considered questions of law and, as such, will likewise be subject to de novo review. *EagleMed v. Travelers Insurance*, 315 Kan. 411, 420, 509 P.3d 471 (2022).

A. *Whether the nature of Suitter's injury and the conditions of his employment placed him within the scope of the drug testing requirement*

The Board found that Suitter willfully refused to submit to the drug test and as a result, he forfeited his right to the benefits available under the Act. K.S.A. 44-501(b)(1)(E) states:

> "An employee's refusal to submit to a chemical test at the request of the employer shall result in the forfeiture of benefits under the [Act] if the employer had sufficient cause to suspect the use of alcohol or drugs by the claimant or if the employer's policy clearly authorizes post-injury testing."

Parsing that language, the first question we must resolve is whether Suitter was even subject to the drug testing requirement at issue. It is the latter of the two potential forfeiture triggers that is relevant to our factual landscape—whether Suitter fell within a policy maintained by Johnsonville which clearly authorized the company to require a drug test from him.

Suitter takes the position that he was beyond the reach of the drug test requirement because Johnsonville never formally acknowledged that he suffered an injury while on the job. As support, Suitter directs our attention to the parties' hearing before the ALJ when Johnsonville denied that Suitter suffered a repetitive trauma injury. According to Suitter, that denial means the company's policy "did not clearly authorize post-injury testing" for Suitter as required by K.S.A. 44-501(b)(1)(E).

Not surprisingly, Johnsonville adopts a stance contrary to Suitter's. It first contends that employers are under no obligation to officially and formally proclaim an injury as work-related to trigger the drug test requirement set forth under the statute. But although the company did not admit workplace injury in the proceedings, to the extent such recognition is required, the record reflects the company treated Suitter's injury as

6

legitimate when it gave him time off after Dr. Myers issued his work restriction. When Suitter returned to work, the company was cognizant of his needs and placed him in a training role in the warehouse to relieve him of the trucking assignment that gave rise to his injury. Finally, the company representative from Johnsonville asserted that when it scheduled Suitter's appointment at Cotton O'Neil Clinic it did so with the intention of obtaining an evaluation of his range of motion, an assessment of his ability to work, and to ensure that he received mitigating care, in addition to securing a drug test.

Johnsonville asserts that the policies outlined in its employee handbook undeniably authorized post-injury testing in Suitter's case. It specifically directs our attention to the language contained therein which advises: "Future drug and alcohol tests are required if Members are injured on the job, are involved in an injury on the job, appear to be under the influence, or are involved in an incident where Company property is damaged." Johnsonville clarifies that the phrase "involved in an injury on the job," is intended to encompass alleged workplace accidents.

Johnsonville's arguments and a careful analysis of its foundation satisfies us that there is substantial competent evidence which supports the Board's conclusion that Suitter's injury and circumstances placed him within the ambit of the drug testing requirement.

B. *Whether Johnsonville's actions are properly interpreted as a request for Suitter to submit to a drug test*

Having established that Suitter was subject to the drug testing requirement, we must ascertain whether the measures taken by Johnsonville constituted a legitimate request for Suitter to submit to the test in accordance with K.S.A. 44-501(b)(1)(E) ("An employee's refusal to submit to a chemical test *at the request of the employer* shall result in the forfeiture of benefits." [Emphasis added.]). Suitter contends that Johnsonville's

actions missed the mark because the company never informed him that a drug test would be performed during his appointment. Instead, he was unaware of that fact until the medical assistant advised him during the appointment that his departure would constitute an automatic positive result for the drug test. Suitter further argues that any notice which could be attributed to Johnsonville specifically was not conveyed until he reunited with Stahl in the waiting room after he left the exam, and she warned him of the consequences of leaving prematurely.

Johnsonville counters Suitter's contentions by merely reiterating its assertion that Suitter was well aware of the company's drug testing procedures. Thus, whether he received additional notice prior to the appointment is of no moment.

Our review of the details elicited before the Board concerning the day of the appointment reveals it is without question that when Suitter returned to the waiting room, Stahl made it clear to him that a drug test was a required component of his exam. Thus, Suitter received notice of the testing requirement that day from two independent sources, the medical assistant and Stahl. Even if it could be said that Suitter somehow failed to appreciate the ramifications of his obstinance, it is undeniable that he at least understood a drug test was required as part of his exam.

When we couple the advance notification Suitter received by virtue of the employee handbook with the advisements he received from both the medical assistant and Stahl while he was at the clinic, we are satisfied the record contains substantial competent evidence to support the Board's conclusion that Johnsonville requested Suitter to submit to a drug test during his exam.

C. *Whether Suitter's premature departure from his exam can be classified as a refusal to submit to the required drug test*

Working our way through the express language of K.S.A. 44-501(b)(1)(E), we must next determine whether, when the Legislature opted for use of the term "refusal," it selected a word whose interpretation is expansive enough to encompass Suitter's decision to terminate the exam before the chemical test was conducted. Our research reveals that the term "refusal," as used in K.S.A. 44-501(b)(1)(E), is intended to carry with it an element of willfulness or intent. *Byers v. Acme Foundry*, 53 Kan. App. 2d 485, Syl. ¶ 3, 388 P.3d 621 (2017). That is, the statute contemplates a positive intention to disobey and to hinder in circumstances where an employee makes a deliberate decision not to attend the examination, or to obstruct or prevent the employer from gathering its own independent medical evaluation of the employee's medical condition. *Neal v. Hy-Vee, Inc.*, 277 Kan. 1, 16, 81 P.3d 425 (2003).

Suitter contends there was no evidence to support the conclusion that his actions amounted to either willful or intentional conduct undertaken for the express purpose of hindering or obstructing the company's ability to obtain medical evidence related to Suitter's condition. He points to the fact that he expressed a willingness to take the test and again reiterates that Johnsonville is at fault for failing to provide him with advance notice of its expectations for the exam. We are not persuaded. To the contrary, if Suitter truly intended to comply with the terms of the evaluation, he would have simply taken the drug test rather than defy the warnings repeatedly expressed by the medical assistant and Stahl.

We are satisfied that the record as a whole contains substantial competent evidence that a reasonable person would accept as sufficient to support the Board's conclusion that Suitter willfully refused to submit to a drug test clearly authorized by Johnsonville's drug testing policy. Again, when Suitter accepted employment with Johnsonville, the

9

employee handbook he received contained a clearly defined drug testing policy for employees who reported an injury. When that process was triggered by Suitter's report of an on-the-job injury, he attended the medical appointment scheduled by Johnsonville at which time two separate individuals informed him that his appointment included a drug test. Finally, the record clearly demonstrates that Suitter was repeatedly warned that his premature departure from the exam would have negative consequences in that his drug test results would reflect either a positive result or a refusal. Suitter chose to disregard the warnings and made the conscious decision to get in his truck and leave the clinic before the test could be performed. Based on these facts, the Board did not err in determining that Suitter refused to submit to a drug test that was clearly authorized by Johnsonville's policies.

D. *Whether Suitter's refusal to submit to the chemical test can be used as justification for denying his workers compensation benefits when Johnsonville did not attempt to collect a test sample from Suitter within a reasonable time following his accident or injury*

Suitter next asks us to analyze whether the Board's interpretation of the provision concerning the breath test requirement effectively countermands the longstanding policy undergirding the Act to grant its provisions liberal construction so that workers are better situated to secure benefits when they suffer injuries during the course of their employment. To reiterate, the Board concluded that Suitter refused to submit to a urinalysis that was a mandatory investigatory step when ascertaining the compensability of his injury, and that such refusal required forfeiture of any workers compensation benefits he might have otherwise been eligible to receive. Suitter contends that in arriving at that conclusion, the Board placed greater priority on the punitive aspect of K.S.A. 44-501(b)(1)(E) and impermissibly disregarded the liberal construction the Act was intended to be afforded. An issue concerning the proper interpretation or construction of the Act raises a question of law. *EagleMed*, 315 Kan. at 420. "Appellate courts exercise unlimited review on questions of statutory interpretation without deference to an administrative

10

agency's or board's interpretation of its authorizing statutes." *Redd v. Kansas Truck Center*, 291 Kan. 176, Syl. ¶ 4, 239 P.3d 66 (2010).

By way of background, the Act was designed to establish a system under which an injured worker relinquishes their right to a common-law tort recovery for a work-related injury in exchange for a fixed and relatively prompt payment for that injury without the need to demonstrate negligence on the part of their employer. See *Pardo v. United Parcel Service*, 56 Kan. App. 2d 1, 11-12, 422 P.3d 1185 (2018). So as not to run afoul of constitutional safeguards, however, it is essential that this quid pro quo approach to recovery be reasonable. *New York Central R.R. Co. v. White*, 243 U.S. 188, 201, 37 S. Ct. 247, 61 L. Ed. 667 (1917). Stated another way, it would do "violence to the constitutional guaranty of 'due process of law'" if the Legislature set aside common-law tort liability "without providing a reasonably just substitute." 243 U.S. at 201.

In *Bair v. Peck*, 248 Kan. 824, 811 P.2d 1176 (1991), the court recognized that the Legislature is restricted in the degree to which it may reduce an injured worker's right to obtain a remedy. Specifically, once having established a substitute remedy, the Legislature "cannot constitutionally proceed to emasculate the remedy, by amendments, to a point where it is no longer a viable and sufficient substitute remedy." 248 Kan. at 844. When construing workers compensation statutes, the court must make legislative intent effective by liberally construing the Act to award compensation and benefits whenever reasonably possible. *Kindel v. Ferco Rental Inc.*, 258 Kan. 272, 284, 899 P.2d 1058 (1995).

The language of a workers compensation statute must be applied with an eye toward its obvious purpose of encouraging recognition of claim-producing accidents so that injured employees may be notified of their rights to compensation. *Morgan v. Inter-Collegiate Press*, 4 Kan. App. 2d 319, 322, 606 P.2d 479 (1980). Even so, the provisions

11

of the Act must be applied impartially to both employers and employees. K.S.A. 44-501b(a); *Wheeler v. Boeing Co.*, 25 Kan. App. 2d 632, 636, 967 P.2d 1085 (1998).

In conducting review of this issue, we are concerned only with whether the Board correctly construed and applied K.S.A. 44-501(b)(1)(E). As noted above, appellate courts exercise unlimited review over questions involving the interpretation or construction of a statute, owing "'[n]o significant deference'" to the agency's or the Board's interpretation or construction. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 457, 228 P.3d 403 (2010). We will only grant relief if we conclude that "the agency has erroneously interpreted or applied the law." K.S.A. 77-621(c)(4).

One of the general tenets of workers compensation law is that when an employee suffers a personal injury which arose out of and in the course of their employment, the employer shall be liable to pay compensation to the employee in accordance with the provisions of the Act. K.S.A. 44-501b(b). A notable exception, and the one directly at issue in this case, was carved out by the Legislature at K.S.A. 44-501(b)(1)(A) and is colloquially known as the "impairment defense," as it may potentially insulate an employer from liability under the Act where an employee's use or consumption of alcohol or drugs was a contributing factor in the injury. See *Young v. Great Bend Cooperative Assn.*, 50 Kan. App. 2d 158, 159, 324 P.3d 306 (2014).

Suitter asks us to determine whether the Board erred in essentially finding this defense applicable in his case as a result of his test refusal. The particular aspects of the statute that are critical to resolution of Suitter's claim are set out below.

> "(b)(1)(A) The employer shall not be liable under the workers compensation act where the injury, disability or death was contributed to by the employee's use or consumption of alcohol or any drugs, chemicals or any other compounds or substances . . . .

. . . .

(C) It shall be conclusively presumed that the employee was impaired due to alcohol or drugs if it is shown that, at the time of the injury, the employee had an alcohol concentration of .04 or more, or a GCMS confirmatory test by quantitative analysis showing a concentration at or above the levels shown on the [statutorily provided chart]:

. . . .

(D) If it is shown that the employee was impaired pursuant to subsection (b)(1)(C) at the time of the injury, there shall be a rebuttable presumption that the accident, injury, disability or death was contributed to by such impairment. The employee may overcome the presumption of contribution by clear and convincing evidence.

(E) An employee's refusal to submit to a chemical test at the request of the employer shall result in the forfeiture of benefits under the workers compensation act if the employer had sufficient cause to suspect the use of alcohol or drugs by the claimant or if the employer's policy clearly authorizes post-injury testing.

(2) The results of a chemical test shall be admissible evidence to prove impairment if the employer establishes that the testing was done under any of the following circumstances:

(A) As a result of an employer mandated drug testing policy, in place in writing prior to the date of accident or injury, requiring any worker to submit to testing for drugs or alcohol;

. . . .

(3) Notwithstanding subsection (b)(2), the results of a chemical test performed on a sample collected by an employer shall not be admissible evidence to prove impairment unless the following conditions are met:

13

(A) The test sample was collected within a *reasonable* time following the accident or injury." (Emphasis added.) K.S.A. 44-501.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 200, 506 P.3d 267 (2022). When a statute is plain and unambiguous, we must give effect to the intention expressed by the Legislature through the statutory language it has chosen, rather than determine what the law should or should not be. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607-08, 214 P.3d 676 (2009). We will not speculate as to legislative intent and decline to read something into the statute that is not readily found within its terms. If the statutory language is clear, there is no need to resort to statutory construction. 289 Kan. at 608.

In those instances when the language of a provision contains an ambiguity, we will consult our canons of construction in an effort to resolve that uncertainty. *Johnson v. U.S. Food Service*, 312 Kan. 597, 601, 478 P.3d 776 (2021). Even statutory language that appears clear at first blush, may ultimately prove ambiguous when considered in the context of particular facts or another applicable statute. *Schmidt*, 315 Kan. at 200 (citing *State v. Scheuerman*, 314 Kan. 583, 587, 502 P.3d 502 [2022]; *McCullough v. Wilson*, 308 Kan. 1025, 1035, 426 P.3d 494 [2018]).

Beginning with what we can glean from the plain language of the provision, it is readily apparent that a key factor throughout is the concept of time. Principally, that to meet the impairment exception the employer bears the burden to show that the worker was impaired within the meaning of K.S.A. 44-501(b)(1) at the time of the injury. The Kansas Supreme Court has consistently reaffirmed that the statute requires a showing of impairment at the time of the accident. *Schmidt v. Jensen Motors, Inc.*, 208 Kan. 182, Syl. ¶ 1, 490 P.2d 383 (1971), marked one of the court's first opportunities to interpret the intoxication provision in K.S.A. 44-501(b) and it determined that employers "have the

burden of establishing that the injury to or death of the workman results solely from his intoxication." Similarly, in *Poole v. Earp Meat Co.*, 242 Kan. 638, Syl. ¶ 4, 750 P.2d 1000 (1988), the court revisited the provision under what was then K.S.A. 1987 Supp. 44-501(d) and concluded that to "defeat a workers' compensation claim based on claimant's intoxication, an employer must prove not only that the claimant was intoxicated, but that such intoxication was the substantial cause of the injury." See *Kindel*, 258 Kan. at 285 (same). And in *Foos v. Terminix*, 277 Kan. 687, 700, 89 P.3d 546 (2004), the court reviewed the language once again in arriving at its conclusion that the employer established the worker was impaired due to alcohol and that substantial evidence supported the administrative law judge's conclusion that the worker's consumption of alcohol contributed to his injuries. Finally, in *Young*, a panel of this court rejected the employer's attempt to rely on the impairment exception based on Young's *prior* use of illicit drugs. This court found that "[w]ithout any evidence of *contemporaneous* impairment, either shown through the parameters establishing statutory impairment or other substantial evidence, the affirmative defense under K.S.A. 2010 Supp. 44-501(d)(2) did not apply to Young's claim." (Emphasis added.) 50 Kan. App. 2d at 165-66.

Any lingering doubts which exist concerning the significance the Legislature placed upon the timing between the employee's consumption of chemical substances and the complained of injury may be dispelled when subsection (b)(3)(A) is included in the analysis. Pursuant to that subsection, an employer is foreclosed from using the results of the employee's chemical test as evidence toward exemption from liability under the "impairment defense" if the employer failed to collect the test sample "within a reasonable time following the accident or injury." K.S.A. 44-501(b)(3)(A).

Suitter's case offers a bit of a nuance given that his case involves a chemical test refusal, as opposed to a chemical test result. Nevertheless, following an extensive analysis, we are satisfied that is a distinction without a difference and that a test refusal dovetails reasonably with the timing principles governing those tests which produce a

15

positive result. Accordingly, we conclude that equal treatment should be afforded to both and each should be subject to the same timing restrictions.

In arriving at this determination, we acknowledge the Legislature did not precisely attach the same "at the time of the injury" or "within a reasonable time following the accident or injury" language to those chemical tests producing a refusal as it did with those that end in affirmative result. K.S.A. 44-501(b)(1)(D), (b)(3)(A). Appellate courts are required to consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *Herrell v. National Beef Packing Co.*, 292 Kan. 730, 745, 259 P.3d 663 (2011) (quoting *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 754-55, 189 P.3d 494 [2008]). We are equally obligated to construe statutes in such a way as to avoid unreasonable or absurd results, with an eye toward the presumption that the Legislature does not intend to enact meaningless legislation. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013) ("[W]e must construe statutes to avoid unreasonable or absurd results, and we presume the legislature does not intend to enact useless or meaningless legislation.").

The Legislature has endeavored to establish an environment that creates a fair opportunity for injured workers to obtain those benefits from their employer to which they may be entitled because of their injury. The point in our specific context is to ensure there are consequences to the employee and protections for the employer when the employee attempts to perform their job while under the influence of chemical substances and sustains an injury as a result. To ascertain whether such causal connection exists, the corresponding test must be performed "within a reasonable time following the accident or injury." K.S.A. 44-501(b)(3)(A). We see no justification for interpreting K.S.A. 44-501(b)(1)(E) in such a way as to not impose the same timing restrictions on the use of an employee's refusal of a chemical test as evidence of impairment, that limit the use of an employee's failure of a chemical test. That is, unless the refusal is obtained "within a

reasonable time following the accident or injury," the refusal shall not be admissible evidence to prove impairment. K.S.A. 44-501(b)(3)(A). The statutory language at issue here only penalizes test refusal when the "employer's policy clearly authorizes post-injury testing," which demonstrates that the testing requested and refused must be reasonably capable of establishing whether the employee was under the influence of drugs or alcohol at the time of the injury. See K.S.A. 44-501(b)(1)(E). The *refusal* of a delayed test should not be afforded any different treatment than the *failure* of a delayed test. Neither circumstance accurately informs the key question of whether the employee was chemically impaired when their injury occurred.

With those essential principles as our backdrop, we turn to the specifics of Suitter's second claim, whether the Board properly found that Johnsonville was insulated from liability as a product of Suitter's chemical test refusal. The record before us reflects that Dr. Myers took Suitter off work on November 20, 2020, because of Suitter's work injury. Johnsonville scheduled Suitter's corresponding medical evaluation, which would also include his chemical test, for December 8, 2020, over two weeks, or more specifically, 18 days after Suitter reported his injury.  Using as our guide the interpretation the concept of reasonableness has received in the context of timing for a failed chemical test, we conclude that the Board erred in its finding because Suitter's test refusal did not occur "within a reasonable time following the accident or injury."

What is properly considered reasonable for purposes of a test failure was a point of analysis in *Martin v. Staffpoint and Commerce & Industry Ins. Co.*, No. 1,058,718, 2012 WL 6811291 (Kan. Work. Comp. App. Bd. December 12, 2021). That case presented a situation where Martin sustained a back injury during the course of her employment and submitted to a drug test three days later which yielded positive results for cocaine and amphetamine. The ALJ's order intimated that the time frame between Martin's injury and her testing date fell outside of what is considered reasonable for purposes of K.S.A. 44-

17

501(b)(3)(A), thus Martin was entitled to receipt of workers compensation benefits. The Board upheld the conclusion reached by the ALJ and found:

> "A urine sample collected three days after an employee's injury is not collected within a reasonable time after the accident or injury as required by K.S.A. 2011 Supp. 44-501(b)(3)(A). Quite simply, the issue is whether claimant was impaired by cocaine on the date of her injury, not three days later." 2012 WL 6811291, at *5.

We note that the Board's decision in *Martin* is neither anomalous nor an outlier. It was also tasked with analyzing the issue in *Orth v. Brittain Machine, Inc.*, No. 1,061,431, 2013 WL 1384401 (Kan. Work. Comp. App. Bd. March 29, 2013). In that case, Orth suffered an accident on June 23, 2012, and took a chemical test five days later that was ultimately positive for marijuana. There was no other evidence the employer could point to which demonstrated that Orth was under the influence of any substances when his injury occurred. The Board ultimately concluded that the five-day delay between Orth's date of injury and the administration of the drug test was not sufficient to satisfy the reasonability requirement of the statute. 2013 WL 1384401, at *5.

These cases demonstrate a strict adherence to the overall purpose of the Act to recognize, protect, and honor an injured employee's right to compensation and benefits whenever it is reasonably possible to award the same. There is no sound justification for not following that lead in this case where Suitter's test was requested 18 days after his injury was first reported, a passage of time which far exceeds the 3- and 5-day periods deemed unreasonable in *Martin* and *Orth*, respectively. Our obligation to liberally construe K.S.A. 44-501(b)(1)(E) to ensure Suitter receives those benefits to which he is reasonably entitled leads to the conclusion that the chemical test request at issue ran afoul of the reasonableness requirement mandated by the Act. To find otherwise would allow an absurd result in which an employer could be alleviated of responsibility under the Act if an employee refuses a drug or alcohol test request months or years after an accident—

where the test would have no reasonable probability of demonstrating whether the employee's use of drugs or alcohol contributed to their injury. Again, we must interpret statutes to avoid absurd results. *Northern Natural Gas Co.*, 296 Kan. at 918. Accordingly, the Board erred when it determined that Suitter's refusal to participate in the chemical test warranted forfeiture of his workers compensation benefits.

II. *Whether the Board applied K.S.A. 44-501(b)(1)(E) in an unconstitutional manner when analyzing Suitter's case*

The previous issue Suitter presented for our consideration required us to determine exactly what K.S.A. 44-501(b)(1)(E) entailed and whether it was applicable to the facts and circumstances of his case. But our inquiry does not end there. Resolution of Suitter's case in full demands an analysis of not only what the Legislature intended in adopting the content of the provision, but also what was contemplated by way of its application. To review, we exercise de novo review over issues that require us to determine whether the Board erroneously applied the law to undisputed facts. *Mera-Hernandez*, 305 Kan. at 1185.

Suitter asserts that the Board applied K.S.A. 44-501(b)(1)(E) in an unconstitutional manner during its review of his case and offers a multifaceted argument in support of this contention. He first alleges that the Board's construction of the provision compromised his right to due process because it allows Johnsonville to essentially conceal from Suitter that the medical evaluation it scheduled for him to assess his injury would also include a mandatory drug test. His argument is followed by the contention that the Board failed to distinguish between an "accident" and a "repetitive trauma." Next, Suitter returns to the issue concerning the reasonable time frame in which a chemical test must be conducted and highlights the Board's failure to establish a finer point for what is considered "reasonable." Finally, he asserts that the Board's interpretation of K.S.A. 44-501(b)(1)(E) results in the absence of a substitute remedy for injured workers which satisfies section 18 of the Kansas Constitution Bill of Rights and

the Fourteenth Amendment to the United States Constitution. We will address each of his contentions in turn.

Suitter first argues that his due process rights were violated when the Board essentially ratified the use of deceptive tactics by employers to obtain drug tests from their employees. We decline to adopt Suitter's view. The only requirement contained within K.S.A. 44-501(b)(1)(E) is that the employer request the employee to submit to a drug test. As previously discussed, that expectation was clearly made known to Suitter here. The issue was specifically addressed in the employee handbook Suitter received upon commencing employment with Johnsonville and he was notified by two individuals on the day of the appointment that his medical evaluation would include a drug test. Suitter's remaining contentions are not subject to such perfunctory resolution.

Turning to Suitter's claim that section 18 of the Kansas Constitution Bill of Rights guarantees an individual's right to a remedy, his argument is based specifically on the following language: "'All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law.'" *Pardo*, 56 Kan. App. 2d at 11. We further note that the Fourteenth Amendment to the United States Constitution states that no State shall "'deprive any person of life, liberty, or property without due process of law. '" 56 Kan. App. 2d at 11.

When determining whether a due process violation exists, a two-step test is used.

"'If a remedy protected by due process is abrogated or restricted by the legislature, "such change is constitutional if '[1] the change is reasonably necessary in the public interest to promote the general welfare of the people of the state,' . . . and [2] the legislature provides an adequate substitute remedy" to replace the remedy which has been restricted.' [Citations omitted.]" 56 Kan. App. 2d at 13.

20

As previously discussed, the legislative intent when adopting the Act was to encourage recognition of claim-producing accidents so that injured employees may be notified of their rights to compensation and be awarded compensation and benefits whenever reasonably possible. It cannot be said that the Board's interpretation of the Act promotes the general welfare of the people of the state. The Board neglected to appreciate that the provision at issue requires a different analysis when triggered in the context of a repetitive injury like Suitter's versus a single accident. Additionally, as analyzed more extensively above, the Board failed to provide any explanation for how a sample collected over two weeks after the onset of a repetitive trauma injury was first reported could help determine whether an employee was chemically impaired when the injury developed. It is unclear how the drug test Johnsonville scheduled for Suitter would even aid in the adjudication of his workers compensation claim. If refusal of a drug test is allowed to result in forfeiture of all benefits under the Act, without greater consideration given to the circumstances surrounding the administration of the test, then it cannot be said that the Act is being liberally construed to award compensation whenever reasonably possible.

Ultimately, the Board misinterpreted the governing law and issued a ruling that is not only unreasonable but also defies the underlying legislative intent of the Act. In essence, the Board denied Suitter the substitute remedy he is entitled to under the Act.

Finally, Suitter notes that six issues he raised before the ALJ were dismissed as moot following the ALJ's determination that Suitter refused a drug test under K.S.A. 44-501(b)(1)(E). He likewise requested an analysis of those issues by the Board, but his request was denied when the Board affirmed the ALJ's ruling that Suitter refused the drug test. Our decision however, and its corresponding remand, should not allow for consideration of those claims.

CONCLUSION

The factual issues that Suitter raises are unpersuasive due to a lack of substantial competent evidence contradicting the Board's conclusions. The same cannot be said for the challenge he advances against the Board's application of key statutory provisions within the Act that are triggered by the facts and circumstances of Suitter's case. Suitter persuasively argues that when analyzing his case, the Board neglected to afford the Act the liberal interpretation the Legislature intended it to receive and thereby erroneously applied the law to the facts of his case. As a result, Suitter was denied workers compensation benefits that he may have reasonably been entitled to as a result of the injury sustained while in the employ of Johnsonville. The Board erroneously interpreted and applied the law in order to arrive at its conclusion and that decision cannot be permitted to stand.

Reversed and remanded.